## BROWNELL *vs.* PALMER AND OTHERS.

In an action of trespass, *quare clausum fregit*, it appeared, that, from as far back as any living witness could remember, up to 1825, the *locus in quo* was part of a public highway, but had not been in use, as such, since 1823; that, in 1825, the selectmen of the town expressly discontinued such highway, as one originally laid out by their predecessors, and such discontinuance was approbated by the town, and acquiesced in by the public, but there was no record of any laying out of such road, by the town or the county court, nor any evidence of a dedication of the premises to the public, by any proprietor of the soil. It was held, in such case, that the jury had a right to presume, that such highway was originally laid out by the selectmen, and was one which they had a right to discontinue.

Where, in such action, the plaintiff offered, in evidence, an ancient vote, discontinuing the highway in question, which purported to be a vote passed at a meeting of the inhabitants of the town, legally holden by adjournment, and there was no further evidence, that such meeting was warned for the purpose of acting, in reference to such vote, it was held, that the jury had a right to presume, that the meeting was legally warned for that purpose, until the contrary was shown.

Where such vote referred to other papers, which had been lost, it was also held, that in its application, it was to be taken, in connection with such papers, and that the contents of the latter might be proved by parol.

A, being in the occupation of certain premises, which were claimed, by the selectmen of the town, to be a part of the public highway, was notified by them, in conformity with the statute, to remove the obstructions placed thereon, by him. It was claimed by A, that the *locus in quo* was part of an ancient highway which had been discontinued, but he gave no notice of such claim to the selectmen. In an action of trespass, brought by A, against the selectmen, for removing such obstructions, and reconstructing said highway, it was held, that A was not estopped from showing such discontinuance, by reason of his neglect to notify the selectmen thereof, at the time of said notice from them.

THIS was an action of trespass, *qu. cl. fr.*, brought by Edward P. Brownell, against William Palmer, Jr., Charles W. Lay, Ezra T. Jones and Elijah C. Warner.

The defendants pleaded the general issue, with notice, that they should prove certain facts, as a justification.

The cause was tried at Haddam, March term, 1851.

Upon the trial, the plaintiff introduced evidence to prove, that, at the time of the commission of the trespasses complained of, he was, and for more than twenty years previous thereto, had been, in the possession of the premises described in his declaration, and that the defendants, on the 18th day of September, 1850, and on several subsequent days, broke and entered upon the premises, cut down divers trees and bushes, thereon growing, built thereon two bridges, one across a river, called Moodus river, running through the premises, and the other over a sluice-way leading from his pond to his mill, removed a building thereon standing, and plowed up the ground.

The defendants admitted the possession of the premises

by the plaintiff, and the commission, by them, of the aforesaid acts, and claimed that they were justified in so doing, upon the ground, that the premises were a part of an old highway, and that said acts were done, for the purpose of removing the obstructions thereon, and repairing it, for the accommodation of the public travel. And, in support of their claim, they called witnesses, some of whom were seventy years of age, to prove that the premises, as far back as they could remember, were used as a public highway, and were a part of the main road, leading from the north part of the town of East Haddam, to the town of Lyme, and had so continued to be used, until March, 1823, when the bridge across said river was carried away, a new road opened, eastward of the premises, and connecting with said main road, at points northerly and southerly of the premises,— and that the plaintiff, afterward, entered upon the premises, cut a sluice-way across the same, and erected thereon a building, by means of which he had inclosed the principal part of said old highway.

They further introduced evidence to prove, that Palmer and Warner, two of the defendants, and William Marsh and Ansel Hungerford, at the time of the commission of the trespasses, and for some time previous thereto, were selectmen of the town of East Haddam ; that, at the request of sundry inhabitants of said town, said Palmer, Warner and Marsh, gave due notice to the plaintiff, in conformity to the requirements of the statute, to remove the obstructions, by him placed upon said highway, which he neglected and refused to do, and therefore they, and Lay and Jones, the two other defendants, as their servants, acting under and by their authority, entered upon the premises, removed the encroachments, and did the acts complained of, for the purpose of repairing said highway, and making it fit for public travel, and did nothing more than was necessary for that purpose.

The plaintiff admitted, that there was formerly a highway

across the premises, but claimed that the same had been legally discontinued, and introduced evidence to prove, that in March, 1823, when the bridge upon the premises was carried away, the selectmen of said town of East Haddam laid out, and caused to be made, a new highway, a little eastward of the old one, and intersecting it, at points northerly and southerly of the premises; and that, in consequence thereof, the old road between said points of intersection, down to the time of the commission of said trespasses, had ceased to be used as a public highway, and by reason of the destruction of said bridge, had become impassable by horses and carriages; that in January, 1825, the selectmen of said town executed a writing, and caused the same to be recorded, discontinuing the north end of said old road, lying south of the north point of intersection of said old and new roads.

He further introduced evidence to prove, that in February, 1825, James H. Brownell, his brother, purchased a tract of land, embracing the premises described in the declaration, and all the traveled portion of the old highway, down to the southern point of intersection of the two roads; that in the month of June following, the then selectmen of East Haddam executed and delivered to said James, a writing, of the same tenor with the one discontinuing the old road over the premises, and all that part lying south, down to said southern point of intersection, leaving about ten rods on said old road, unaffected by said writings; that on the 21st day of November, 1825, the two writings, given to said Gates and said James, were laid before the inhabitants of said town of East Haddam, at a legal town-meeting, and thereupon, said inhabitants passed the following vote: "At a meeting of the inhabitants of the town of East Haddam, legally holden, by adjournment, at the town house, in said town, on Monday, Nov. 21, 1825, Hobert Estabrook, moderator:

"*Voted*, To accept of the discontinuance of an old highway, near the grist-mill, by the stone factory, on condition, that the adjoining proprietors pay the expense of the new road,

laid in lieu thereof;" that said James kept the writing so delivered to him, without ever having caused it to be recorded, until some three years preceding the trial, when the same was casually lost, and, upon due proof of such loss, parol evidence was admitted, to prove its contents.

The plaintiff further offered evidence to prove, that in 1825, and soon after the purchase, by the said James, he entered into possession of the premises, under a title derived from said James, erected a factory, a short distance below the premises, cut a sluice-way across the premises, on the southerly side, to conduct the water from a pond above, to his factory, erected a building upon the northerly end of the premises, thereby inclosing the principal part of the premises, and entirely obstructing the public travel over the same, and so continued to occupy the premises, as his own property, for a period of more than twenty years, without any molestation or objection from any one ; and therefore, he prayed the court to instruct the jury, that such possession and acquiescence were sufficient evidence of an abandonment of the road, by the public, and conferred upon him an exclusive right of possession.

He also offered in evidence, the report of a committee, and a vote of the town of East Haddam thereon, by which said Ansel Hungerford, then one of the selectmen of the town, was appointed a commissioner for the repair of the several roads in the town; and thereupon claimed, and prayed the court to instruct the jury, that neither the other selectmen, nor any other persons, had a lawful right to repair said highway, or build said bridges, without authority either from the town, or said commissioner. It was proved and admitted, that said Hungerford had been called upon to act with the other selectmen, in opening and repairing said old road, and had refused to have anything to do with it ; and that, at that time and when said trespasses were committed, he was a selectman and a road commissioner, under the aforesaid vote.

The defendants objected to the admission of parol evidence, to show that the writing given to the said James H. was laid before the town meeting, at the time when said vote, relating to the discontinuance of the old road, was passed,—and also, to the admission of said vote in evidence, because it did not, upon its face, show that it applied to the road in question, and because there was no evidence, that the warning embraced any notice, that any such matter was to be acted upon at the meeting; but the court overruled the objections, and admitted the evidence.

They further claimed, that the selectmen in 1825, had no power to discontinue the road over the premises, because there was no evidence, that said road had been laid out by them, or any of their predecessors in office, and prayed the court so to instruct the jury. And upon this subject, it was not claimed, by either party, that there was any evidence of the existence of any such highway, except what might be inferred from the use of it as such, as aforesaid. And the defendants introduced evidence to prove, that, after the bridge on the premises was carried away by a freshet, in 1823, some planks were laid across said river, below where said bridge had stood, over which the plaintiff and others occasionally passed on foot.

The defendants further claimed, that if said road had been discontinued by the selectmen, as claimed by the plaintiff, it was his duty to inform the selectmen thereof, when he was notified, by them, to remove the obstructions, because such discontinuance had not been recorded; and prayed the court so to instruct the jury.

The court instructed the jury, that the principal question of fact for them to determine, was, whether the old highway, over the premises described in the declaration, had been legally discontinued, by the selectmen of the town of East Haddam, with the approbation of that town, in 1825, in the manner claimed by the plaintiff. If they should find it so discontinued, then the defendants were trespassers, and

were liable for the acts, which it was proved and admitted, they had done upon the premises. But if they should find, that it had not been so discontinued, then they ought to find a verdict in favor of the defendants, unless they should further find, that the defendants had committed trespasses upon the premises, beyond the limits of said highway; that the selectmen, in 1825, had, by law, no power to discontinue any highway, except such as had been laid out by themselves, or their predecessors in office. Yet in the present case, as there was no evidence, showing by whom the highway was originally laid out, if the jury should find that the selectmen, in 1825, expressly discontinued it, as a highway originally laid out by their predecessors in office, and there was no evidence, showing that it had not been so laid out, and such discontinuance had been approbated by the town, and acquiesced in by the public and all concerned, for a period of more than twenty years, they would have a right to presume, that the highway was one which the selectmen had power to discontinue, and that their doings were legal; that, in relation to the vote of the town, passed at a meeting of the inhabitants, holden on the 21st of November, 1825, they could not legally act upon any matter, not specified in the warning. Yet, in the case of an ancient vote, found upon the records of a town, purporting to be a vote passed at a legal meeting of the inhabitants, in the absence of all evidence in relation to the contents of the warning, by which the meeting was called, the jury had a right to presume that the meeting was legally warned, for the purpose of enabling them to act upon the subject matter of the vote, and that the doings of the town were legal, until the contrary was shown, especially when such doings had been long acquiesced in by all concerned; that, in relation to the possession of the premises by the plaintiff, the law was so that, by an adverse possession of a highway, for a period of more than twenty years, he could not gain a title as against the public. To

prove such a title, it was necessary for him to make out a prescriptive right,—that is, a title by an occupation, extending at least as far back as living witnesses could remember. But in the present case, the long possession by the plaintiff, with the acquiescence on the part of the town and the public, was a circumstance, proper to be taken into consideration by the jury, in connection with the other evidence in the case, in determining whether there had been an actual discontinuance by the selectmen, in the manner claimed by the plaintiff.

The jury having returned a verdict in favor of the plaintiff, the defendants moved for a new trial, on the ground, that the court erred, in admitting the evidence objected to, and in the instructions given to the jury.

*Bulkeley* and *W. D. Shipman*, for the motion, contended, 1. That the court erred, in instructing the jury, that they had a right to presume, that the highway in question was one the selectmen had power to discontinue, and that their doings were legal. There was no proof offered, or claim made, that any land records of the town have been lost, since 1773. *Fowler* v. *Savage*, 3 Conn. R., 97. *Wooster* v. *Butler*, 13 Conn. R., 315. 1 Greenl. Ev., sec. 20. *Sutton* v. *Uxbridge*, 2 Pick., 436. *Franklin* v. *Dedham*, 18 Pick., 544. *Hamilton* v. *Ipswich*, 10 Mass. R., 506. *U. S. Bank* v. *Corcoran*, 2 Peters, 133.

2. The vote of the town was not admissible in evidence; it was passed at an adjourned town-meeting. There was no offer to show when the original meeting was held : it may have been before any action of the selectmen. There was no claim made, that the warning could not be found, and there is no presumption that the meeting had a right to pass this vote. It was incumbent on the party offering the vote, and seeking to avail himself of it, to show that the meeting was so warned as to give the town power to pass it. *Willard* v. *Killingworth*, 8 Conn. R., 247. *Brunswick* v. *Mc*

*Kean,* 4 Greenl., 508. *Butler* v. *Holley,* 6 Greenl., 145. *Hathaway* v. *Clark,* 5 Pick., 490. *Thayer* v. *Stearns,* 1 Pick., 109. *Beach* v. *Rogers,* 1 Mass. R., 159.

3. The vote, in terms, applied to another portion of the road, the discontinuance of which appeared upon the town records, and the jury were not directed to consider, whether this vote embraced the way in question, by applying the vote to its proper subject matter, by the aid of extrinsic evidence. The vote was conditional upon its face; and no evidence was offered, or claim made, that its terms were complied with. It was therefore invalid. Stat. 1849, p. 421.

4. Parol evidence was not admissible, to prove that the writing, given to Brownell by the selectmen, was before the meeting when the vote was passed. *Southington Ecclesiastical Society* v. *Gridley,* 20 Conn. R., 204. *Taylor* v. *Henry,* 2 Pick., 397.

5. The plaintiff, not having informed the selectmen of the discontinuance of the road, as claimed by him, when notified to remove the obstructions, is now estopped to claim damages, and the court should so have charged. 1 Greenl. Ev., sec. 22, 207. *E. H. Bank* v. *Shailor,* 20 Conn. R., 22. *Brown* v. *Wheeler,* 17 Conn. R., 354. *Kinne* v. *Farnesworth, id.,* 361. *Roe* v. *Jerome,* 18 Conn. R., 153. *Bushnell* v. *Church,* 15 Conn. R., 421. *Gray* v. *Wells,* 27 E. C. L., 54, 58. *Dazell* v. *Odell,* 3 Hill, 215. *Reynolds* v. *Lounsbury,* 6 Hill, 536.

*Dutton* and *Ingham,* contra, contended, 1. That parol evidence, as to the discontinuance of the highway, was properly admitted. The statute only requires, that the discontinuance shall be approved by the town. The discontinuance itself need not be recorded. Stat. 1849, p. 421. Stat. 1821, p. 272.

As the writing was lost, parol evidence of its contents could be given. This may be done, even in case of the loss of a record. 1 Greenl. Ev., § 509.

Parol evidence is always admissible, to apply an *instrument*, and for the same reason a *vote*, to its subject.  1 Greenl. Ev., § 295, 297, 301.  *West School District v. Merrills*, 12 Conn. R., 437.

2. The evidence of the discontinuance, by the selectmen, was properly admitted.  Where an act, which is done, presupposes a previous act, it is evidence, especially after a lapse of time, and acquiescence, that the previous act was done.  *West School District v. Merrills*, 12 Conn. R., 440.  *U. S. Bank v. Dandridge*, 12 Wheaton, 64.  1 Greenl. Ev., § 20, n. 2.  3 Starkie's Ev., 1250, and n. 1.  Best on Presumptions, 145.  *Copp v. Lamb*, 3 Fairf., 312.  *Mussey v. White*, 3 Greenl., 290.  2 U. S. Dig., 276, § 1643—275, § 1639.  14 Mass. R., 147.  2 n. 14, 210.  3 U. S. Dig., 279, § 1722.  *Knox v. Jenks*, 7 Mass., 488.  *Thompson v. Carr*, 5 N. H. R., 510.

No record or vote of the town was necessary, nor was the laying out required to be lodged on file.

3. The appointment of Hungerford, as road commissioner, superseded the authority of the selectmen to repair the highway, if it was not discontinued.  The defendants were therefore trespassers, and if the evidence of discontinuance was improperly admitted, a new trial would not be granted.  If granted at all, it would only be for a hearing in damages.  Stat. 1849, p. 418.

4. The evidence of the possession of the plaintiff, and the acquiescence of the town and public, was clearly admissible, in corroboration of the testimony regarding the discontinuance.  J. H. Brownell would not have inclosed and improved the land, as his, on which the old highway passed,— and the town and public would not have suffered him to do it, unless there had been a discontinuance.

HINMAN, J.  The defendants, selectmen of the town of East Haddam, did the acts complained of in the declaration, for the purpose, as they claimed, of repairing one of the

highways of that town; and the case turned upon the question, whether the *locus in quo* was highway, or whether it was the unincumbered estate of the plaintiff. Anciently, there had been a highway there, but it had not been in use, as such, at any time since 1823; and the plaintiff claimed it was discontinued, by the selectmen in 1825, and the discontinuance approved by the town, at an adjourned town-meeting in November of that year. On this point a question arose, whether the ancient highway was one originally laid out by the selectmen; if it was not, then the selectmen had no power to discontinue it in 1825. There was no record of any survey or laying out of the road, either by the selectmen, or the original proprietors of the town, or by the county court. Nor was there any evidence of the dedication of the premises to the public use, as a highway, by any owner or proprietor of the soil; all that appeared was, that from as far back as any living witnesses could remember, up to 1823, when it ceased to be any longer used as a highway, the place was a part of the main road, from the north part of East Haddam, to the town of Lyme.

Under these circumstances, the judge at the circuit was of opinion, and instructed the jury, that if the selectmen in 1825, expressly discontinued the highway, as one originally laid out by their predecessors in office, and there was no evidence, showing that it had not so been laid out, and such discontinuance had been approbated by the town, and had been acquiesced in by the public, and all concerned, for more than twenty years, then the jury would have a right to presume, that the highway was one which the selectmen had power to discontinue, and their doings were legal.

We think this instruction was correct. It may be admitted that, if it had been shown that the ancient highway had been established, since the year 1773, when it was first required, that the acts of the selectmen, in laying out highways, should be approved by the town, in order to be valid, it would have been necessary for the plaintiff to show,

that it had been originally laid out by the predecessors of the selectmen of 1825; because, in that case, the doings of the town, in approving of the survey and lay-out by the selectmen, would appear upon the records of the town, and the absence of any such record would be strong presumptive proof, that the road was laid out in some other way. In the present instance, the proof went back as far as any living witnesses could remember, and it was found impossible to show when the road commenced. Perhaps it would be proper to presume, from this circumstance alone, that the road in fact had its commencement before 1773. But, whether so or not, we think this fact, in connection with the admitted fact, that there was no record evidence, of any kind, of the original lay-out of the road, proved, that it was not laid out by the county court, or by the original proprietors of the town, or by the selectmen since the year 1773; because in either of these cases, there would have been record evidence of its origin. The road then must have been dedicated to the public use, as a highway, by some owner of the soil, or it must have been laid out by the selectmen, at a time when they could legally do so, under such circumstances, that no record of their proceedings would probably be preserved for any considerable time; and so, no presumption would arise against the claim or supposition, that it was so laid out, from the fact that we find no record of the proceeding.

But long previous to 1773, the selectmen were authorized to lay out highways, and the ancient statutes, empowering them to do so, did not require their proceedings to be reported to the town, or to be recorded. Statutes, ed. 1750, p. 381. Ed. 1715, pp. 50, 51. Peters, J., 3 Conn. R., 98.

If this road was first laid out by the selectmen, before they were required to lay their proceedings before the town, there would of course be no regular town record of it; and the survey which it would be necessary for the selectmen to make, being a loose paper, only preserved on file

with the other papers in the custody of the selectmen, it could hardly be expected to be preserved for any great length of time; and after a lapse of more than half a century, which has now intervened, considering the manner in which the papers of selectmen, generally, are even now kept, no one could reasonably hope or expect to be able to find it.

It is true, that the road might have been dedicated to the public use, by some individual owner of the soil; but this, though a possible manner in which a highway may have originated, is by no means the most probable manner; and if the selectmen of 1825, acting only upon the evidence before them, assuming, at the same time, that it was only such as we have here indicated, came to the conclusion, that this ancient highway was one originally laid out by their predecessors, we should hardly be disposed to differ from them. But it is obvious, that the selectmen of 1825 might have had evidence, other than that to which we have alluded, and which the lapse of intervening time has destroyed, that satisfied them, that the road was originally laid out by their predecessors in office. It is in cases of this sort, that the maxim of law applies, that acts of an official character, which require the concurrence of official persons, are presumed to be rightly done, until the contrary appears. It is said, that this maxim does not apply, to give jurisdiction to the selectmen of 1825; but their jurisdiction must be shown, by first showing, that the ancient road had been laid out by their predecessors; and, that then the maxim will apply, to supply the proof of collateral parts, necessary to give validity to the act.

If this was a recent transaction, not supported by the possession of the plaintiff, exclusive, and adverse to any supposed right of the public, at the place in question, there would, doubtless, be force in this suggestion; but, in cases where the original possession can not be accounted for, except upon the idea of a grant, or relinquishment of the right, by a third person, or even by the public, it is correctly said

in Best on Presumptions, 145, "that there is hardly a species of act or document, public or private, that will not be presumed, in support of possession;" and the cases to which he refers, fully sustain this proposition.

The maxim itself, it is said, is nothing more than the statute of limitation expressed in a different form, and applied to other subjects. 2 Greenl. Ev., § 20. After the lapse of twenty years, it has been applied to the warnings of the meeting of a corporation. 1 N. H. R., 310. And in 3 N. H. R., 340, 4 *id.,* 71, the court say, that in all cases where enough of the proceedings are shown to render it not improbable, that they may have all been regular, "then, long and quiet possession may be left to a jury, as evidence of particular facts, the ordinary proof of which is not to be found."

In Massachusetts, after twenty years' possesion of real estate, held under an administrator's sale, the court left it to the jury to say, whether the administrator took the oath, and posted notices of the sale, according to the directions of his license or order to sell. *Gray* v. *Gardner,* 3 Mass. R., 399. And our own court held, (*Bryan* v. *Hinman,* 5 Day's R., 211) that it was proper to submit the question to a jury, to find, from lapse of time, and other circumstances, whether notice of an administrator's sale of real estate, had been given according to law. It has also applied this maxim to the acts of an officer, in setting off land on execution. *Booth* v. *Booth,* 7 Conn. R., 350. *Brace* v. *Catlin, id.,* 358, n. *Ives* v. *Lyon, id.,* 505. We think, therefore, that the course taken upon this question, by the judge on the circuit, was the proper course. Whether he would have been justified (from the mere fact of the disuse of the old highway, for twenty years, accompanied by an exclusive appropriation of it to the private use of the plaintiff, without any evidence, going to show that it had been discontinued, in some particular way,) in submitting it to the jury to find, whether it had not been legally discontinued, in some way, is a question which

it is not necessary to determine. Had it been a private right of way, acquired by prescription, it would have been lost by such a *non-user*, in fifteen years. We are aware, however, that prescription, as such, does not run against a public right, and that statutes of limitation, unless made for that purpose, do not apply to public rights; and it has even been said, that no length of time, during which a highway may not have been used, will prevent the public from resuming the right, if they think proper. Gibbs, J., in *Rex* v. *St. James Munton*, 2 Selwin N. P., 1362; and in *Vooght* v. *Winch.*, 2 B. & A., 662, it was held, that twenty years' possession of navigable water would not have the effect of preventing the king's subjects from using it as such. Still it was said, by our own court, in *Beardslee* v. *French*, 7 Conn. R., 125, that the *non-user* of a highway, for many years, was *prima facie* evidence of a release of the public right to the owner of the soil. The court undoubtedly went upon Lord Mansfield's principle, of quieting the possession. He said, that "courts had thought that a jury should presume anything, for that purpose." Cowp., 215, 102. And, in favor of very long possession, this, as we have already said, is true; but whether twenty years are sufficient for this purpose, we will not attempt to determine, being satisfied with the ground taken by the judge on the circuit.

The defendants objected to the admission of the vote of the town, discontinuing, as the plaintiff claimed, the old highway in question, on the ground, that there was no evidence, that the meeting was warned, for the purpose of acting upon the subject matter of said vote. The vote was passed at an adjourned town-meeting, held on the 21st day of November, 1825. The annual town-meetings, in all our towns, are, by statute, required to be held in the months of October, November or December; and the universal practice is, as we believe, to hold them, either in the first or second weeks of October or November; we presume, there-

fore, that the adjourned meeting, at which this vote was passed, was a continuation of the annual town-meeting of that year. The statute, then and now in force, authorized the selectmen, with the approbation of the town, to discontinue any highway laid out by them, or their predecessors in office. Stat. 1824, p. 227.

The selectmen, then, had jurisdiction over this subject, it being found to have been a road laid out by their predecessors. Now, the selectmen act, in the first instance, and then lay the matter before the town. They act partly in the capacity of public agents, in this matter, and, to a certain extent, as the agents of the town. They too, as town agents, are the individuals who are required to warn town-meetings, and the jury have found, that, with the approbation of the town, they did discontinue this highway. But, before the town could give such approbation, the meeting must have been warned for the purpose, and it was the duty of the selectmen, to see that it was so warned. Can it be supposed, that they would neglect such a duty as this ? Or that they would lay such a matter before a meeting, which they had themselves warned, without first taking the steps necessary to render the action of the town legal? The selectmen discontinued the road, in June of that year. This was several months before the action of the town. Of course, they knew, when they warned the meeting, that fall, that the matter required the action of the town : we think, therefore, they are entitled to the presumption of having acted correctly, until the contrary is shown.

Again, it is claimed, that the vote of the town does not show, upon its face, what highway was discontinued : that the vote "to accept of the discontinuance of an old highway, near the grist-mill, by the stone factory," is not specific enough to show that this road was the one intended. But the vote, on its face, refers to another paper, or, as was the case here, to other papers—"the discontinuance of an old highway." This discontinuance was in writing, and

was the act of the selectmen; it must, therefore, be taken, together with the vote, and as a part of it, and thus taken, the vote is specific enough. It is true, that in this case, it was necessary to make out the contents of this discontinuance, by parol, because the paper itself was lost,—but lost documents may always be supplied, by proof of their contents.

It was claimed again, that the vote referred only to another portion of this old highway, in regard to which the discontinuance was on record; and the jury were not instructed to consider, whether it embraced the part in question. This objection was not made on the trial, nor was the court asked to present any such question to the jury. The claim on the trial was, that the plaintiff ought not to be permitted to show that the discontinuance was before the town-meeting, when it passed the vote alluded to, on the ground that it was an attempt to prove, by parol, the act of the town, and so to eke out a part of the vote, by parol. This objection, if well founded, would have been fatal to the vote. But it is not well founded. There was no necessity, to spread out upon the town-clerk's book of entries, the papers to which the vote referred, and which formed a part of the vote itself: these papers were as much a part of the record, as if they had been copied in full. It was the duty of the clerk, to keep them on file, but, for some reason, he delivered the one in question, to the owner of the soil. This, though improper on the part of the clerk, did not destroy it, as a part of the record; it still remained a file, to which the clerk's minutes referred, and being now lost, its contents may be proved by parol. The vote, so far as the clerk's minute shows it, is general in its terms, and applies to the whole of the "old highway, near the grist-mill," not to a part of it. The only question then was, whether the "discontinuance" to which it refers, was of the whole of the old road, or only of a part of it. It happened, that the selectmen acted at different times, discontinuing one part of it

in January, and the other part in June : but together, these papers were a discontinuance of the whole. The town-meeting might have acted upon them separately also, but it chose to act upon the whole at once. We see no objection to this ; and showing that the paper was before the meeting at the time, is simply applying the vote to its proper subject matter.

The defendants, before they committed the acts complained of, on the supposition that the *locus in quo* was highway, as selectmen of the town of East Haddam, gave notice to the plaintiff, in conformity to the statute, to remove the obstructions by him placed upon the premises, and he neglected and refused to do so. The motion does not show, specifically, on what ground he so refused. As he had been in the exclusive possession of the premises, for more than twenty years, occupying there in a manner wholly inconsistent with the claim, that there was a highway there, the natural inference would be, that he was occupying as owner, and as such, claiming a right co-extensive with his occupation. Still, it is insisted, that, because he did not inform the selectmen, that the road had been discontinued, he is estopped now from claiming damages for the trespass. To this claim, we can only say, that we know of no principle of law, that makes it necessary for a party, in possession of property, to give a history of his title, to every intruder who may choose to contest it with him ; and it does not seem to us to make any difference, in this respect, that the party claiming the benefit of such a rule, happens to be a board of selectmen, claiming to act in the discharge of its official duty.

As we find no error in the proceedings of the superior court, we do not advise a new trial.

In this opinion, the other judges concurred, except WAITE,

J., who tried the cause, in the court below, and was therefore disqualified, and STORRS, J., who was absent.

New trial not advised.