VIVIAN SCHOMER ET AL. *v.* MORRIS J. SHILEPSKY ET AL.

HOUSE, C. J., LOISELLE, MACDONALD, BOGDANSKI and LONGO, JS.

Argued April 3—decision released July 22, 1975

*Raymond W. Beckwith,* with whom, on the brief, was *Frederick A. Freedman,* for the appellants (defendants).

*Vivian Schomer,* pro se, the appellee (named plaintiff).

BOGDANSKI, J. The plaintiffs, Vivian and Jesse Schomer, brought this action seeking an injunction to prohibit the defendants from using a particular lot for commercial parking in violation of zoning regulations. The defendants answered that the lot was, in fact, located in a business zone and that its use for parking conformed to applicable regulations. The trial court concluded that the subject lot was situated in a residence zone and enjoined the defendants from using it for business purposes.

From that judgment the defendants have appealed, assigning error in the court's refusal to find material facts claimed to be admitted or undisputed; in finding facts without evidence; in admitting certain evidence; in the overruling of their claims of law; in the conclusions reached; and in the granting of injunctive relief.

The unchallenged finding[1] discloses that, since 1969, the plaintiffs have lived at Woods Grove Road, Westport, on property known as lot 110A on the Westport tax assessor's map. Since 1956, the defendants have owned lot 103E, a narrow, finger-like strip of property located about fifty feet to the east of the plaintiffs' lot. The defendants own additional land to the south and east of lot 103E on which is located a neighborhood shopping center and a restaurant. Lot 103E is bounded on the east by a brook which was piped in and covered by the defendants shortly after acquiring the property, on the south by Canal Street, and on the west by a canal. A driveway belonging to the plaintiffs' neighbor runs parallel to the canal, between the plaintiffs' lot and the canal.

The defendants were under the impression that lot 103E was zoned for business purposes. From 1956 until 1969 they used the northerly section of the lot for storage and the southerly portion as a

---

[1] The assignment of error directed to the court's finding of facts without evidence has not been briefed and is considered abandoned. *Pappas* v. *Pappas*, 164 Conn. 242, 243, 320 A.2d 809. Those portions of the draft finding which the defendants argue were improperly excluded are not "admitted or undisputed" facts, or are not material in that the result will not be affected by their inclusion. See Practice Book § 628; *Aillon* v. *State*, 168 Conn. 541, 542 n.1, 363 A.2d 49; *Lewis* v. *Lewis*, 162 Conn. 476, 481, 294 A.2d 637.

parking area for about twelve cars. In 1969, the plaintiffs learned that the lot was to be bulldozed and paved to expand the parking area. Objecting to this project, the named plaintiff questioned the zoning enforcement officer of Westport as to the zone classification of lot 103E, and was told that it lay in a business zone. The plaintiffs did not pursue the matter, and the lot was paved to provide parking for about fifty cars.

Lot 103E provided parking for the defendants' shopping center and for an "elegant" restaurant located across the street on Canal Street to the south. That restaurant failed in 1970, and, in 1972, the defendants leased the premises for another restaurant called the Crossroads and agreed to provide parking for its patrons on lot 103E. The Crossroads restaurant caters to singles and is open from 11 a.m. to 1 or 2 a.m., six nights a week. It serves liquor and provides entertainment. Banging of car doors, night drag racing, shining headlights, loud motors, increased pollution from waste thrown into the canal, and other disturbances emanating from the parking lot have caused the plaintiffs to lose sleep and suffer great discomfort.

In March, 1972, the Crossroads sought a variance for the erection of an outdoor sign. In opposing this variance, the named plaintiff, an experienced researcher, checked the assessor's office records and discovered lot 103E to be assessed as residential land. Further investigation of land maps, deeds, newspaper articles, town records, locked files of the planning and zoning commission, and variance folders convinced her that lot 103E was zoned residential rather than business. She then requested the town planning and zoning commis-

sion to take action in the matter, but the commission declined to do so. Thereupon, the plaintiffs brought this court action. Based upon the testimony of the planning director of Westport and a maze of testimonial and documentary evidence presented to it, the trial court concluded that lot 103E was located in a residence zone and that an appropriate injunction should issue.

The defendants' initial claim of error relates to the trial court's admission of the testimony of Melvin H. Barr, the town planner for Westport, who gave his opinion that lot 103E was located in a residence B zone. A claim of error in the admission of evidence must be tested by the finding. Practice Book § 648; *State* v. *Harris,* 147 Conn. 589, 599, 164 A.2d 399. The finding contains no recital of specific objections made and exceptions taken, nor does it clearly state the ruling of the court, and in this regard fails to comply with § 648 of the Practice Book. *State* v. *Allen,* 155 Conn. 385, 396, 232 A.2d 315. Though the duty rests upon the appellants to see to it that the finding is sufficient, to avoid possible injustice other portions of the record properly before us have been examined in order to consider this claim. The defendants argue that Barr had no special ability or expertise which qualified him to state his opinion concerning the zone classification of lot 103E. This contention is without merit. At the time of trial Barr had been the planning director of Westport for about four months. He had eight years' experience with two consulting firms involved with urban design. He possessed degrees in engineering and public administration. He had a working knowledge of the functioning of the planning commission office. The trial court's wide discretion as to the qualifica-

tions of an expert witness will not be disturbed unless clearly shown to have been abused. *Hyatt v. Zoning Board of Appeals,* 163 Conn. 379, 386, 311 A.2d 77; *Oborski v. New Haven Gas Co.,* 151 Conn. 274, 280, 197 A.2d 73. No such showing has been made here.

The defendants further argue that the documents upon which Barr's testimony was based spoke for themselves and did not need expert interpretation. The true test for the admissibility of expert testimony is "whether the witnesses offered as experts have any peculiar knowledge or experience, not common to the world, which renders their opinions founded on such knowledge or experience any aid to the court or the jury in determining the questions at issue." *Taylor v. Monroe,* 43 Conn. 36, 44. To be sure, if a witness with no peculiar knowledge of an area described by a single map or document attempts merely to construe the untechnical terms of that map or document for the court, such testimony would be improper. 7 Wigmore, Evidence (3d Ed.) § 1956. In the present case, however, Barr's testimony was based upon an examination of all available town records relating to the zoning classification of the property in question, not on a solitary untechnical document. Moreover, as a local town authority, he was presumed to be more familiar with the peculiar character and inherent nature of the zonal development of his town than was the court. *Suffield Heights Corporation v. Town Planning Commission,* 144 Conn. 425, 427-28, 133 A.2d 612. His knowledge of zoning, of urban planning, and of the town of Westport certainly was "not common to the world," and when combined with his investigation of town records for the specific purpose of ascertaining the zoning classification

of lot 103E, could be regarded as an "aid to the court" in determining that classification. The court committed no error in finding the witness Barr qualified and in admitting his testimony.

Error is next directed to the trial court's admission of certified copies of a 1942 map and 1930 zoning regulations discovered in a locked file in the zoning commission's office.[2] The essence of the defendants' claim is that those copies should not have been admitted because original zoning commission records were not available for comparison and for verifying the authenticity of the copies. The defendants' insistence on original records to verify the accuracy of those documents goes beyond the dictates of common sense. To require the retention of aged originals after certified copies have been made and filed in the proper place would be impracticable. There is statutory authority for replacing original records with photographed copies, such copies being considered the same as the originals for all purposes. General Statutes §§ 1-16, 1-17, 1-18. Moreover, even if the originals were not replaced pursuant to the statutes, this court has long held that in the absence of official records, proof thereof may be made by the introduction of secondary evidence. See *Cleary* v. *Zoning Board,* 153 Conn. 513, 517–18, 218 A.2d 523, where a series of zoning maps, printed and sold to the public, were found to be properly admitted over objection since the official zoning maps establishing

---

[2] The defendants also argue that a 1973 map was improperly admitted. The specific objection made and the circumstances surrounding its admission have not been clearly presented in the record; thus, the ruling cannot be considered. *State* v. *Manning,* 162 Conn. 112, 118, 119, 291 A.2d 750; *McCarthy* v. *Maxon,* 134 Conn. 170, 173, 55 A.2d 912.

boundaries could not be located. See also *Sieger* v. *Riu*, 123 Conn. 343, 345, 195 A. 735; *Brownell* v. *Palmer*, 22 Conn. 107, 123.

The defendants next challenge the trial court's conclusion that lot 103E was located in a residence zone as being against the weight of the evidence. The conclusions reached are tested by the finding. *Brauer* v. *Freccia*, 159 Conn. 289, 293, 268 A.2d 645. They must stand unless they are legally or logically inconsistent with the facts found or unless they involve the application of some erroneous rule of law material to the case. *Johnston Jewels, Ltd.* v. *Leonard*, 156 Conn. 75, 79, 239 A.2d 500; *Craig* v. *Dunleavy*, 154 Conn. 100, 105, 221 A.2d 855. The unchallenged finding in this case amply supports the conclusion that lot 103E was located in a residence zone, and we find no erroneous application of any rule of law material to the case. The fallacy of the defendants' position on this issue is that their contention is based upon a plausible interpretation of the zoning regulations which describe the business zone as extending to "the canal or brook" and a "working map" which had never been adopted by the town of Westport. An examination, however, of the official 1930 zoning maps as well as language in the regulations themselves describing the residence B district as extending "from Willow Brook northwesterly" clearly shows that the brook and not the canal is the dividing line between the residence and business districts. Because the trial court's conclusion as to the status of lot 103E is amply supported, we need not discuss other constructions of the various maps and documents urged by the defendants.

The defendants next argue that their "reliance upon an existing zoning classification over a long

period of time," as evidenced by the various actions taken by them, creates a vested right. The evidence reveals that the parking lot was not paved until 1969 and that the present use of the lot for parking until 2 a.m. began with the Crossroads restaurant in May, 1972. In effect, their use in reliance upon the alleged zoning classification was less than four years. Moreover, we are not confronted with a situation where zoning regulations have been enacted or amended after a party has relied on existing regulations, or lack of them, to his detriment. The action taken here was contrary to the regulations at all times. In those circumstances no vested rights have been infringed upon.

The defendants' final claim is that injunctive relief was inappropriate, and that, in any event, it should have been denied because of laches. The issuance of an injunction lies in the sound discretion of the trial court exercised according to recognized principles of equity. *Moore* v. *Serafin,* 163 Conn. 1, 6, 301 A.2d 238; *Dimmock* v. *New London,* 157 Conn. 9, 18, 245 A.2d 569. Though the primary responsibility for enforcing zoning regulations rests with the zoning commission, where a violation results in special damage to an individual, the injured party has a right to seek injunctive relief. *Newington* v. *Mazzoccoli,* 133 Conn. 146, 156, 48 A.2d 729; *Fitzgerald* v. *Merard Holding Co.,* 106 Conn. 475, 482, 138 A. 483. The trial court's finding of a substantial interference with the plaintiffs' right of enjoyment of their home and property owing to the increased traffic on lot 103E reasonably supports the issuance of the injunction. The defense of laches does not apply unless there is an unreasonable, inexcusable, and prejudicial delay in bringing suit. *Paiva* v. *Vanech Heights Construc-*

*tion Co.*, 159 Conn. 512, 519, 271 A.2d 69; *Robinson v. Myers,* 156 Conn. 510, 519, 244 A.2d 385. Because of the erroneous information received from the town official, the plaintiffs had no knowledge of their possible claim until the spring of 1972. Little more than one year elapsed between that time and the bringing of their action. In the interim the plaintiffs attempted to pursue the matter through appropriate administrative channels. The delay was not unreasonable.

There is no error.

In this opinion the other judges concurred.