[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this action the plaintiff Northeast Parking, Inc. ("Northeast") seeks an injunction prohibiting the defendant Roncari Development Company ("Roncari") from continuing to operate its valet parking facility in the defendant Town of Windsor Locks ("Town"). The Town's Building Official James Plumridge is also named as a defendant in this action. This case is the latest offensive in the airport valet parking wars, a series of legal actions involving participants in the highly competitive airport valet parking business servicing passengers of Bradley International Airport in Windsor Locks.[1] As in the previous cases, this action challenges Roncari's right to construct and operate a valet parking facility. CT Page 7132
The essential facts and procedural history of this case are set forth in a Joint Stipulation of Facts agreed to by the parties:
 "1. On or about September 4, 1985, Roncari Development Corporation aka Roncari Development Company (Roncari) applied for a building permit for the subject property located on 9 Shoenphoester Road in Windsor Locks, Connecticut for the purpose of developing a valet parking operation.
 2. The Roncari application was denied by the building inspector of the Town of Windsor Locks and on September 6, 1985 Roncari filed an application with the Zoning Board of Appeals and sought a public hearing on certification of its use of its property at Shoenphoester Road, Windsor Locks, Connecticut, for motor vehicle storage and parking of motor vehicles pursuant to Section 4.5.4 of the Windsor Locks Zoning Regulations.
 3. Roncari's application for a building permit was denied by the Zoning Board of Appeals. Roncari appealed this denial and Roncari appealed from the Planning and Zoning Commission's revision to the zoning regulations.
 4. During the pendency of this appeal, on or about May 1, 1987, the Town of Windsor Locks adopted regulations which specifically did not include valet parking as a permitted use. (1987 Windsor Locks Zoning Regulations).
 5. On May 3, 1989, Judge Barall sustained Roncari's appeal.
 6. Judge Barall also sustained Roncari's appeal of the denial of its application for certification under Section 4.5.4. by the Zoning Board of Appeals. Judge Barall ordered the Zoning Board of Appeals to reconsider Roncari's request for certification and appeal of the denial of the building inspector in accordance with Sec. 4.5.4 of Town Zoning ordinance as existed on September 4, 1985.' CT Page 7133
 7. On or about July 10, 1989, pursuant to Judge Barall's decision, the Zoning Board of Appeals (ZBA) held a public hearing to reconsider Roncari's application for motor vehicle storage and parking of motor vehicles pursuant to Section 4.5.4 of the Windsor Locks Zoning Regulations.
 8. On July 14, 1989, Roncari's application was approved by the ZBA which found all criteria in the Town's ordinances and state statutes had been met complying with the regulations as they existed prior to September 9, 1985.
 9. On July 28, 1989, four valet parking operators, including the current Plaintiff 5, appealed the ZBA's certification of Roncari's application as complying with the regulations. (plaintiffs' Complaint, Airport Valet Parking. Inc., et al vs. Windsor Locks Zoning Board of Appeals, et al. (Conn.Super. Jan. 9, 1992) (CV 36 59 09). Plaintiffs' complaint was dismissed on or about January 9, 1992, by Judge Mulcahy.
 10. During the pendency of the plaintiffs' appeal described in paragraph 9 above, on or about December 6, 1991, Roncari submitted a site plan to the Town of Windsor Locks for the development of the subject property as a valet parking facility.
 11. On January 22, 1992, the Town of Windsor Locks' Attorney, Christopher Stone, issued a letter to Fred Miclon, the Windsor Locks Building Official, regarding site plan approval.
 12. On or about March 18, 1992, Roncari applied for a building permit for the subject property.
 13. On March 18, 1992 Roncari was granted a building permit, making reference to the site plans on file.
 14. In 1992, the Town of Windsor Locks Zoning Regulation in effect since 1990 stated that a permit shall become null and void six (6) months after it has been issued unless reasonable progress has been made in the work authorized by said permit. The Building CT Page 7134 Official is authorized to renew a permit for periods of six (6) months if, in his opinion, reasonable progress has been made . . .'."
Joint Stipulation of Parties.
In its multi count May 21, 1998 amended complaint, the plaintiff alleges that the defendants' decision to grant a building permit to Roncari deprives the plaintiff of its rights to due process and equal protection of the laws and constitutes intentional interference with its business expectancy. The principal claim of the plaintiff is that the defendant Roncari was provided the right to construct a new valet parking facility at a time when the so-called valet parking moratorium, then in effect in Windsor Locks, prohibited all other valet parking operators, including Northeast, from either expanding their existing valet parking facilities or constructing new ones. Plaintiff's specific argument is that if Roncari ever possessed the right to construct the facility in question, that right arose under regulations that were no longer controlling at the time the Roncari building permits were issued by Plumridge.
The plaintiff seeks injunctive relief only in this case. Its Prayer for Relief claims a temporary and permanent injunction preventing the development or use of the Roncari property as a valet parking facility and a declaratory judgment that the issued permit is void. Because the plaintiff seeks only equitable, but not legal relief, the parties agree that in the context of this case, where the plaintiff is not challenging the decision of the land use agency through an administrative appeal, but rather seeking to enjoin through a direct civil action the use of the Roncari property as authorized by the Town and its Building Official, the plaintiff must plead and prove "special harm." The parties also agree that in the absence of proof that Northeast itself suffered special harm, the plaintiff cannot prevail, no matter how persuasive its claim that its right to due process and equal protection of the laws were violated by the Town and Plumridge. The parties disagree, however, whether the type of injury alleged by Northeast — a diminution of its competitive position — satisfies the definition of special harm. The dispositive issue in this case, therefore, is what constitutes special harm and whether the injury claimed by the plaintiff meets that definition.
 I CT Page 7135
The parties concur with the Supreme Court's repeated rulings that proof of special harm is the essential prerequisite to obtaining injunctive relief in land use disputes. "Though the primary responsibility for enforcing zoning regulations rests with the zoning commission, where a violation results in special damage to an individual, the injured party has a right to seek injunctive relief." Schomer v. Shilepsky, 169 Conn. 186, 194
(1975). "If the plaintiffs have suffered special damages as alleged in their complaint, the court has equitable jurisdiction and may grant injunctive relief." Blum v. Lisbon LeasingCorporation, 173 Conn. 175 (1977). "[A]ny person specifically and materially damaged by a violation of the zoning ordinances which has occurred or is likely to occur on another's land may seek injunctive relief restraining such violation." Karls v. Alexandra
Realty Corporation, 179 Conn. 390, 401 (1980). See, also,Connecticut Practice 9, Fuller, Land Use Law and Practice, § 41.6 at 681 (" While the primary duty of enforcing the zoning regulations is on the municipality, a person suffering a special injury from zoning violations can bring a private enforcement action . . .") In this regard the Supreme Court has emphasized that "[w]e cannot state too strongly the necessity for clear and precise allegations of specific and material claims of damage . . ." Cummings v. Tripp, 204 Conn. 67, 76 (1987).
Although they agree that special harm is necessary to obtain an injunction, the parties dispute the type of injury that constitutes special harm. The plaintiff offers a two-prong definition. First, it contends that "increased competition and some additional injury" constitutes special harm. Plaintiff'sBrief, (August 5, 1998) pp. 17-18. Specifically, Northeast asserts that its special damages "are the increased costs in time, money, and aggravation, in making business investment decisions that comply with the zoning regulations of Windsor Locks, while observing the defendants benefitting [benefiting] from an illegal granting of a permit that destroys the expectations on which the plaintiff's investment and business strategies were based." Id., at 19. Second, the plaintiff claims that a violation of its constitutional right to equal protection and due process of law constitutes special harm, and as such is a basis for granting injunctive relief.
For its part Roncari contends for a more prosaic definition of special harm, arguing that injury which is in the nature of a common law nuisance is the type of injury that the Supreme Court CT Page 7136 is considering when it refers to special harm. A review of the applicable case law supports defendants' argument in this case. Those Supreme Court cases which have considered and affirmed the trial court's finding of special harm have uniformly cited to and relied on conditions that interfere with the plaintiff's use and enjoyment of the property in question. At the same time, competitive injury alone, in the absence of evidence demonstrating interference with the use and enjoyment of the property is not sufficient to award injunctive relief.
For example, in Blum v. Lisbon Leasing Corp. , supra, the Supreme Court affirmed the trial court's grant of injunctive relief, noting that " . . .smoke, loud noises, odor of burning rubber, the tire recapping operation which starts between 5:30 a.m. and 7:00 a.m., the arrival of trucks at irregular hours the fumes and odors produced by idling diesel engines and tractors and the soot deposited on property owned by the plaintiffs all of which tended to destroy the plaintiffs' use and enjoyment of their properties."
Likewise, in Cummings v. Tripp, supra 204 Conn. at 76, in which the plaintiff sought to enjoin the neighbor's claimed illegal use of property for a motel, the Supreme Court noted that "the trial referee specifically concluded that the defendants' use of the property has caused, and if not enjoined, will continue to cause, the plaintiffs irreparable damage and harm. The trial referee also concluded that the defendants' use of the property has caused the plaintiffs much annoyance, personal inconvenience and irritation."
In a similar case, Schomer v. Shilepsky, supra,169 Conn. at 195, the Supreme Court approved the trial court's award of an injunction prohibiting the defendants from using a particular parking lot for commercial parking in a residential zone. "[W] here a violation [of zoning regulations] results in special damage to an individual, the injured party has a right to seek injunctive relief. The trial court's finding of a substantial interference with the plaintiffs' right of enjoyment of their home and property owing to the increased traffic on lot 103E reasonably supports the issuance of an injunction."
Taken together, these cases stand for the proposition that the award of injunctive relief arising out of a violation of land use regulations, policies or procedures is dependent on a finding of special harm or damage. Special harm or damage has been CT Page 7137 understood in these and other cases to refer to injury to or impairment of the owner's ability to enjoy the use of his property as the result of noise, odors, traffic or other similar circumstance akin to a nuisance. Id. See also, Reynolds v.Soffer, 183 Conn. 67, 69 (1981), in which the Court approved the right of the plaintiffs to seek injunctive relief based on their allegations that the defendant's use of his property would "adversely affect the plaintiffs' property, decrease its value, increase the risk of fire and other dangers, specifically endangering health as a result of rodents migrating from the defendants' property during the construction and noise, odors, pollution and disease-causing substances discharged from a new ventilating system."
In this case the plaintiff has neither alleged nor proven that the defendants' actions, even if in violation of applicable zoning regulations, would result in the type of special harm or damage that the Supreme Court has specified is a pre-condition to an award of injunctive relief in a land use case. The plaintiff has not claimed, nor has it presented evidence that the defendants' acts have caused him to be unable to enjoy the use of his property as a result of noise, pollution, odors, etc.[2] In the absence of specific allegations and proof of special harm, the plaintiff is not entitled to injunctive relief. Cummings v.Tripp, supra.
The plaintiff attempts to avoid this result by arguing that "where the violation of a zoning regulation will force an individual to suffer increased competition and additional injury from the same illegal zoning approval, that person is aggrieved and can obtain an injunction against the granting of the illegal permit." Plaintiff's Brief at 17-18, citing Gregorio v. ZoningBoard of Appeals of Windsor, 155 Conn. 422 (1967) and Mobil OilCorp. v. Zoning Board of Appeals of Bridgeport, 35 Conn. App. 204
(1994). Both cases are inapposite. In both Gregorio and MobilOil, the issue before the court was whether the plaintiff was an aggrieved party for purposes of prosecuting an administrative appeal pursuant to General Statutes § 8-8. Unlike this matter, neither case involved a request for injunctive relief and therefore did not raise the issue of special harm. Because the test for determining whether a party has standing for purposes of prosecuting a land use appeal is different than the analysis for determining whether an applicant for injunctive relief has suffered special harm; see, Fuller, Land Use Law and Practice, §§ 32.2 and 42.7, supra; neither Gregorio or Mobil Oil
CT Page 7138 case is controlling in this matter. Because plaintiff has not demonstrated that it has suffered special harm, even if the defendant's acts are improper, it cannot prevail in this action.
 II
Plaintiff's substantive claim in this case, as previously noted, is that both the municipal defendants and Roncari denied Northeast its right to due process and equal protection of the laws by processing Roncari's application for building permits under regulations that were not applicable to all other similarly situated valet parking operators. Even though the court has concluded that the plaintiff is not entitled to injunctive relief under the circumstances of this case, it will nevertheless rule upon plaintiff's substantive allegations. Plaintiff's constitutional claims are set forth in counts one through four of its amended complaint. Count one, addressed to both the Town and Roncari, alleges that plaintiff's right to equal protection of the law was violated by the Town's award to and Roncari's receipt of the building permits which are the subject of the dispute in this case. Count two, addressed to Plumridge and Roncari, makes the same equal protection claim as count one. Count three, addressed to the Town and Roncari, claims that plaintiff's right to due process of law was violated as a result of the building permits being issued without holding a public hearing. Count four, addressed to Plumridge and Roncari, makes the same due process claim as count three.
 A
Plaintiff's constitutional claims in counts one through four against Roncari cannot be sustained. Northeast alleges, and it is undisputed, that Roncari is a corporation. As a private entity it is not subject, under the circumstances of this case, to the strictures of either the state or federal constitutions. "It has long been established that private conduct abridging individual rights does not violate the equal protection clause of the fourteenth amendment to the constitution of the United States. The equal protection clauses of our state and federal constitutions are designed as a safeguard against the acts of the state and do not limit the private conduct of individuals or persons. There is an essential dichotomy between discriminatory action by the State, which is prohibited by the Equal Protection Clause, and private conduct, however discriminatory or wrongful, against which that clause erects no shield." Lockwood v. Killian, CT Page 7139172 Conn. 496, 501 (1977) (internal quotations and citations omitted.)
 B
Northeast's remaining constitutional claims against the Town and Plumridge cannot succeed because of its failure to demonstrate that it has a liberty interest in this matter subject to protection by the due process or equal protection clauses of either the state or federal constitutions.
It is axiomatic that in order to invoke the protections of the due process clause a plaintiff must first demonstrate that it has a protected liberty or property interest. "A constitutionally cognizable property interest is a prerequisite to the attachment of constitutional procedural and substantive due process rights."Grimes v. Conservation Commission of the Town of Litchfield,243 Conn. 266 (1997). Connecticut has adopted the "clear entitlement" test for determining whether, in the context of a land use dispute, a plaintiff has a constitutionally protected liberty interest. The inquiry is "whether the plaintiff has a clear entitlement to the approval he was seeking from the land use regulating body." Red Maple properties v. Zoning Commission,222 Conn. 730, 737 (1992). In order to invoke the protection of the due process clause the plaintiff must demonstrate that "absent the alleged denial of due process, there is either a certainty ora very strong likelihood that the application would have been granted." Id. (Emphasis in original.)
In this case, unlike in Red Maple, the plaintiff was not the applicant before the local land use agency, and is not complaining in this action that is was denied a permit or application for which it claims there was a near certainty of approval. Rather, its central complaint is the unfair or improper enforcement of the town's zoning regulations with respect to Roncari' s application. The virtually identical claim was raised and rejected in Oygard v. Town of Coventry, United States District Court for the District of Connecticut, Civil No. 3:95CV2486 (DJS) (March 23, 1998). In that case the plaintiffs sued the Town alleging that it failed to properly enforce its zoning laws with respect to a tower erected on the plaintiffs' neighbor's property. The District Court rejected that claim, ruling that the "[p]laintiffs do not, however, have a protected property interest in the town's proper enforcement of its zoning regulations as they relate to benefits conferred upon or denied CT Page 7140 other landowners. No due process right is implicated here because the plaintiffs have no right to demand that the Municipal Defendants enforce the zoning laws. The plaintiff's alleged interest simply does not rise to the level of a protected property interest for the purposes of Sec. 1983 litigation."Ruling on Cross Motions for Summary Judgment, pp. 9-10 (internal quotations and citations omitted.) In this case, Northeast has failed to demonstrate that it has a constitutionally protected interest in the Town's enforcement of its zoning regulations with respect to Roncari's application. Id. Accordingly, judgment shall enter for the municipal defendants as to counts three and four.
In counts one and two, Northeast claims it was denied equal protection of the laws in that the Town permitted Roncari to establish a valet parking operation at a time when no other valet operators could have obtained a permit. In Karp v. Zoning Bd. ofCity of Stamford, 156 Conn. 287, 295 (1968), the Supreme Court ruled that "[e]qual protection of the laws forbids all invidious discrimination but does not demand identical treatment for all persons without consideration or differences in relevant circumstances." In order to establish an equal protection violation, the plaintiff must prove that: 1) it was treated differently from other similarly situated persons and 2) that the selective treatment was "motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." FSK Drug Core. v. Perales, 960 F.2d 6, 10
(2nd Cir. 1992)
Northeast's proof fails to satisfy either prong of the FSK test. First, Northeast has failed to demonstrate that it and Roncari are similarly situated. Having failed to apply for a permit to construct a valet parking facility under the premoratorium rules, Northeast does not stand in the same or similar shoes as Roncari and cannot now be heard to complain of unequal enforcement of the law in the absence of proof that it was denied the same opportunity as Northeast. The uncontroverted evidence in is this case demonstrates that Roncari was granted its building permits pursuant to the regulations in effect prior to the so-called valet parking moratorium. While plaintiff vigorously disputes the application of those regulations to Roncari's application, plaintiff cannot complain of unequal treatment in the absence of proof that it requested, but was denied consideration under the same regulations. CT Page 7141
Second, even if similarly situated, the plaintiff has failed to prove that it was selectively treated because of bad faith or a malicious intent to injure on the part of the Town or Plumridge. Assuming that plaintiff's evidence, when viewed in the light most favorable to it, demonstrates favoritism toward Roncari, it does not follow that such favoritism was animated by a malicious intent to injure Northeast. Although plaintiff harbors strong suspicions that the municipal defendants acted out of malice toward the plaintiff, its proof is insufficient to sustain such a conclusion. Karp v. Zoning Board of City ofStamford, supra. Accordingly, judgment shall enter for the municipal defendants as to counts one and two.
 III
The plaintiff's final claim against all three defendants is for intentional interference with a business expectancy. Assuming that such a claim lies against the municipal defendants; see,Kelly Property Development, Inc. v. Lebanon, 226 Conn. 314, 340
n. 30 (1993), the plaintiff has failed to sustain its burden of proof with regard to an essential element of this cause of action.[3] It is well established that" [f]or a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation or that the defendant acted maliciously. An action for intentional interference with business relations . . . requires the plaintiff to plead and prove at least some improper motive or improper means . . . [A] claim is made out only when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself." Robert S. Weiss Associates, Inc.v. Wiederlight, 208 Conn. 525, 536 (1988).
In support of its claim Northeast relies on the following as evidence that the defendants acted maliciously or in bad faith: 1) the Town and Roncari told Northeast informally that it would not be permitted to expand its existing use at 24 Ella Grasso Blvd; 2) Northeast was denied permission to expand its administrative facility at 110 Ella Grasso Turnpike; 3) Northeast was prohibited from installing a canopy at 24 Ella Grasso Turnpike; 4) the municipal defendants issued a cease and desist order against Northeast with respect to its operating an overflow parking facility across the street from its main office; 5) CT Page 7142 improper conversations were held between Roncari's attorney and defendant Plumridge; and 6) the municipal defendants improperly issued Roncari a building permit.
Assuming that the evidence cited by the plaintiff were credited, there is nothing about these facts, either separately or collectively, that demonstrate that the defendants acted in bad faith or maliciously. At best they bespeak an unsuccessful attempt by Northeast to expand its operations as a result of the enforcement by the Town of its zoning regulations. Plaintiff does not contend, nor does the evidence suggest, that the denial of Northeast's requests to expand its facility, construct a canopy or extend its administrative offices was based on an interpretation of the regulations designed to maliciously deprive Northeast of its right under the regulations. Rather, the plaintiff posits that it was denied the same opportunity to expand that was granted to Roncari. While true, that fact standing alone is insufficient to sustain plaintiff's burden of proof as to the element of malicious motive.
Finally, as previously noted, the plaintiff seeks injunctive relief only in this action. While it is true that "[in] appropriate circumstances injunctive relief may be granted against future violations" of contractual expectancy; Restatement of Torts, 2nd Sec. 774A, comment f; the cause of action, sounding in intentional tort, is principally designed to compensate the injured party. See, e.g, Sportsmen's Boatina Corp. v. Hensley,192 Conn. 742 (1984), noting that one of the essential elements of the cause of action is proof of "damages to the plaintiff"; and Restatement of Torts 2nd, Sec. 766A, stating that a party who interferes with the contractual expectations of another is liable "to the other for the pecuniary harm resulting from loss of the benefits of the relation . . ." Having disavowed any claim for damages in this action, and having failed to present proof of irreparable injury, plaintiff would not be entitled to the injunctive relief it seeks.
Accordingly, for the reasons previously stated, judgment shall enter for the named defendants as to all counts of the amended complaint.
SO ORDERED.
ROBERT L. HOLZBERG, Judge of the Superior Court CT Page 7143