WAYNE A. GOING ET AL. *v.* HERBERT I. PAGANI ET AL.

HOUSE, C. J., COTTER, LOISELLE, BOGDANSKI and BARBER, Js.

Argued October 7—decision released November 30, 1976

*Richard A. Wallace* and *Robert A. Teitenberg,* for the appellants (plaintiffs).

*Joseph F. Skelley, Jr.,* with whom was *Jeffrey L. Williams,* for the appellees (defendants).

LOISELLE, J. This is an appeal by the plaintiffs from the judgment rendered following a jury verdict for the defendants and from the court's denial of the plaintiffs' motion to set aside the verdict.

On November 12, 1971, Wayne A. Going, then sixteen years of age, was operating an automobile owned by his father, Merrill L. Going, on route 31 in Coventry. A collision occurred between that vehicle and one owned by Francis Cammisa and operated by Herbert I. Pagani. Through his father, Wayne brought suit against Pagani and Cammisa for personal injuries and other damages and, in his individual capacity, Merrill Going sought to recover for the damages to his automobile and for medical and hospital expenses incurred on behalf of his son. The verdict for the defendants was returned on February 19, 1975.

The principal questions raised on the trial involved the location on the highway of the point of impact between the two automobiles, and which had the right of way. On their appeal, the plaintiffs have briefed and argued two assignments of error addressed to evidential rulings of the court, one claim of error in the court's charge and another in its refusal to set aside the verdict.

The first claim of the plaintiffs is that the court erred in permitting an investigating police officer, Trooper Donald J. Arcari, to testify, as a result of his observations at the scene of the accident, to his opinion as to the location on the highway of the point of collision between the two cars and also erred in admitting into evidence as exhibits two diagrams of the scene prepared by the officer containing his record of the measurements on the highway, the relative positions of the vehicles on it, and his indication of where in his opinion the point of impact was located. The plaintiffs contend that Trooper Arcari did not have such special skill or knowledge beyond the ken of the average juror as to permit him to express his opinion about the location of the point of impact. Secondly, the plaintiffs argue that even if he did have special skill or knowledge, he lacked sufficient facts on which to express an opinion. The plaintiffs also claim that the exhibits based on the trooper's observation, in illustration of his testimony, were inadmissible if his testimony was.

In *Waldron* v. *Raccio,* 166 Conn. 608, 613, 614, 353 A.2d 770, involving a similar claim, this court stated: "Expert opinion testimony as to the point of impact in a motor vehicle accident is proper provided the witness has been qualified and an adequate foundation for his testimony has been

laid. . . . The trial judge has a broad discretion to determine the qualifications of an expert. . . . '[I]f any reasonable qualifications can be established, the objection goes to the weight rather than to the admissibility of the evidence.' . . . 'Some facts must be shown as the foundation of . . . an [expert's] opinion, but there is no rule of law declaring the precise facts which must be proved before such an opinion may be received in evidence. It is largely a matter of judicial discretion whether a witness has been shown to have sufficient experience and opportunity of observation to render his opinion of value.' "

There was evidence which clearly supported the court's finding that Trooper Arcari was qualified to state an expert opinion. He had served twenty-six months as a member of the Connecticut state police department and had investigated 130 to 140 accidents. He arrived on the accident scene within minutes of the collision, made a visual examination of the scene and took measurements which he charted. The opinion he gave at the trial was based on his experience and his own pertinent, first-hand observation. It was well within the trial court's discretion to admit the trooper's testimony based on his investigation. "The trial court's decision is not to be disturbed on appeal 'unless that discretion has been abused, or the error is clear and involves a misconception of the law.' " *Siladi* v. *McNamara,* 164 Conn. 510, 513, 325 A.2d 277. We find no error in the ruling of the court admitting the trooper's testimony and his diagrams to illustrate and explain it.

The plaintiffs next contend that the trial court erred in excluding testimony offered by Robert M. Cromwell, the plaintiffs' expert witness, and in

excluding exhibits offered to illustrate his testimony. The record indicates no challenge to Cromwell's qualifications as an automotive and mechanical safety engineer with expertise in the reconstruction of accidents. In making its ruling excluding Cromwell's testimony, the trial court stated its conclusion that there were "so many factors that are so far from certain on which this expert bases his opinion, I feel the uncertainties as to the essential facts are such as to make an opinion based on them without substantial probative value in this case." In its memorandum of decision denying the motion to set aside the verdict, the court further specified the basis of its ruling: "This opinion was not permitted since the court found [that] it was based on such conjecture and factual uncertainty as to lack any substantial probative value for the jury. *Sears* v. *Curtis,* 147 Conn. 311, 315 [160 A.2d 742]; *Floyd* v. *Fruit Industries, Inc.,* 144 Conn. 659, 666 [136 A.2d 918]. Cromwell did not examine the accident scene until January 19, 1975, some three years and two months after the accident. The road in question had been resurfaced in the interim. As to the point of impact, the jury heard testimony from the operators of the vehicles involved and from police officers who arrived at the scene shortly after the accident and observed the location of the vehicles and the debris on the roadway. The testimony admitted was, by far, the better evidence and there was no need in this case to resort to evidence which could only serve to confuse and possibly mislead the jury. The plaintiffs' expert was permitted to give his opinion on several points to the jury. Other questions were excluded either because they lacked essential facts or were based on facts not in evidence."

The record discloses that Cromwell began his investigation of this accident thirty-eight months after its occurrence. In the meantime, the roadway on which the accident occurred had been repaved, the white or division line on the road had been changed, and the plaintiffs' automobile had been removed from the scene of the accident and later moved again. Cromwell's reconstruction of the accident and his opinion about the crucial point of impact were based on calculations made from photographs, the changed accident site, and the moved automobile. His reconstruction of the accident scene and resulting conclusion as to the point of impact and width of the highway differed substantially from the observations and actual measurements taken by the police at the scene shortly after the accident occurred. As the memorandum of decision stated, "[t]his opinion was not permitted since the court found it was based on such conjecture and factual uncertainty as to lack any substantial probative value for the jury."

The facts upon which an expert's opinion is based are an important consideration in determining the admissibility of his opinion. See annot., "Admissibility of opinion evidence as to point of impact or collision in motor vehicle accident case," 66 A.L.R.2d 1048. As that annotation indicates (p. 1051) : "[I]t may be noted that the cases holding or recognizing the admissibility of skilled or expert opinion evidence show that the witness giving the testimony had an opportunity to investigate the scene reasonably soon after the accident and had sufficient experience to form a reasonable opinion based upon his observations."

This state has long had a simple and workable standard for the admissibility of expert opinion.

"The true test of the admissibility of such testimony is not whether the subject matter is common or uncommon, or whether many persons or few have some knowledge of the matter; but it is whether the witnesses offered as experts have any peculiar knowledge or experience, not common to the world, which renders their opinions founded on such knowledge or experience any aid to the court or the jury in determining the questions at issue." *Taylor* v. *Monroe,* 43 Conn. 36, 44, cited with approval in *Schomer* v. *Shilepsky,* 169 Conn. 186, 191, 363 A.2d 128. Implicit in this standard is the requirement, later articulated, that the expert's knowledge or experience must be directly applicable to the matter specifically in issue. *Siladi* v. *McNamara,* 164 Conn. 510, 513–14, 325 A.2d 277.

As we have already noted, the trial court has wide discretion in ruling on the admissibility of expert testimony and this discretion is "not to be disturbed . . . 'unless that discretion has been abused, or the error is clear and involves a misconception of the law.'" *Siladi* v. *McNamara,* supra, 513. We find no abuse of discretion in the ruling of the court in this case nor can we hold that the court could not conclude, as it did, that the uncertainties in the essential facts on which the witness' opinion was predicated were such as to make an opinion based on them without substantial value. *Sears* v. *Curtis,* 147 Conn. 311, 315, 160 A.2d 742; *Floyd* v. *Fruit Industries, Inc.,* 144 Conn. 659, 666, 136 A.2d 918, and cases cited.

The plaintiffs' next claim of error is addressed to the court's charge to the jury. They contend that the jury were "hopelessly confused" on the correlation of sections of the statutes mentioned in the charge. In their complaint, the plaintiffs alleged

that the defendant driver had violated § 14-231[1] of the General Statutes by failing to pass to the right of the plaintiffs' vehicle and violated § 14-236 [2] by failing to drive as nearly as practicable entirely within his single traffic lane as marked. The court originally charged the jury by reading § 14-231 in its entirety, adding, however, cautionary instruction that § 14-236 of the General Statutes might be more applicable. The plaintiffs excepted to this portion of the charge and the court then recalled the jury to recharge with respect to both statutes allegedly violated. When the jury subsequently requested that the statutes be reread, the trial court complied and, after reading § 14-231, stated "that second half of the statute about giving to the other at least one-half of the main-traveled portion is not the applicable portion of the statute that you should consider in this case, because highways divided by a white line are more specifically governed by 14-236." The plaintiffs took no exception to the clarifying instruction.

[1] "[General Statutes] Sec. 14-231. VEHICLES IN OPPOSITE DIRECTIONS TO PASS ON RIGHT. Drivers of vehicles proceeding in opposite directions shall pass each other to the right, and upon highways having width for not more than one line of traffic in each direction each driver shall give to the other at least one-half of the main-traveled portion of the highway as nearly as possible."

[2] "[General Statutes] Sec. 14-236. MULTIPLE-LANE HIGHWAYS. When any highway has been divided into two or more clearly marked lanes for traffic, (1) a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has ascertained that such movement can be made with safety and (2) the state traffic commission may erect, on state highways, and local traffic authorities, in accordance with standards approved by the state traffic commission, may erect on highways under their jurisdiction, signs directing slow-moving traffic to use a designated lane or, with signs, signals or markings, may designate those lanes to be used by traffic moving in a particular direction regardless of the center of the highway, and drivers of vehicles shall obey the directions of each such sign, signal or marking."

Even if there were error in the original charge, and that is doubtful, the supplemental charge, to which no exception was taken, corrected it. This claim of error is, therefore, without merit.

The defendants' final claim of error is addressed to the court's ruling denying their motion to set aside the verdict. Their motion was predicated upon the claims of error pressed on this appeal. We have found no merit to these claims and, accordingly, find no error in the court's denial of the motion to set aside the verdict.

There is no error.

In this opinion the other judges concurred.