[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION IN RE: PLAINTIFF'S MOTIONS TO SET ASIDE VERDICT DATED JULY 2, 1990
This three count complaint in malpractice was brought by Lula Ford, administratrix, on behalf of the estate of her late son, Rodney Campbell II. The defendants are Kunjathan Thankappen, M.D. and Waterbury Hospital. In count one, Ford alleges that Dr. Thankappen, a practicing psychiatrist, was professionally negligent when he "discharged and released" on May 6, 1983, the late Rodney Campbell from in-hospital care and that such negligence was the proximate cause of Campbell's damages "caused when he attempted to take his own life by an overdose of Elavil and alcohol poisoning on May 9, 1983. . ." and subsequently died on May 13, 1983. Complaint, dated August 29, 1986, first count, 4, 6 A and C. The second count is brought against Waterbury Hospital based on Dr. Thankappen's being its employee; and the third count sounds against the hospital for its alleged malpractice in providing mental health care to the decedent.
During the June 1990 jury trial, the plaintiff-administratrix called the defendant, Dr. Thankappen, as her witness and also Dr. Lawrence E. Miller, a doctor of osteopathy. Miller, a New Jersey resident, was called as an expert witness. The court, after a hearing, declined to qualify Dr. Miller as an expert. Thereafter, the plaintiff moved for a continuance in order to obtain another expert. This request was denied.[1] The plaintiff did not proceed CT Page 3639 further and rested her case. Thereupon, each defendant moved the court for directed verdicts on the grounds that the plaintiff had failed to prove a prima facie case. These motions were granted and upon the jury returning the verdicts as directed, the court entered judgment for the defendant on each of the three counts.
Ford has now filed these two motions to set aside the verdicts. In these two pleadings, the plaintiff argues that the directed verdicts should be set aside because: (1) the court abused its discretion in failing to qualify Dr. Miller as an expert witness; (2) the court erroneously permitted Dr. Miller to be cross examined "through the use of hearsay", and (3) the court was "unduly harsh in its requirements as to unduly surprise plaintiff's counsel" and ought to have given the plaintiff additional time to locate another expert witness, especially since the defendants were granted a continuance of several weeks, pretrial, when their trial counsel suffered serious injuries as a result of an accident. The court ordered the plaintiff to brief the issues raised by these motions.[2] Since the plaintiff failed to brief in response to our order the second and third issues raised in motions to set aside, we deem them abandoned.
Each motion to set aside is denied.
 II.
During this jury trial, Kunjathan Thankappen, M.D. testified that he was born in India; graduated there from Trivandum Medical College; and thereafter did two years of post-graduate training at that educational facility in internal medicine. Subsequently, he came to the United States and took a three year residency in psychiatry at Fairfield Hills Hospital in Newtown, Connecticut. Since 1980, Thankappen indicated that he has been board certified in psychiatry and neurology by the American Board of Psychiatry a and Neurology. From 1980 until May of 1989, Dr. Thankappen was a staff psychiatrist at Waterbury Hospital and indicated that while a member of the hospital staff, he did treat, as part of a health care team, Rodney Campbell as a psychiatric patient, who experienced suicidal ideation and was also a substance abuser. Thankappen indicated that he treated Campbell in the different levels of patient care offered by the defendant hospital; namely, inpatient, outpatient, and day and evening care.
Lawrence E. Miller, D.O. testified that he did his undergraduate work at the University of Tulsa and in 1957 was awarded a Doctor of Osteopathy degree by the Philadelphia College of Osteopathic Medicine, and completed one year internship at Metropolitan Hospital in Philadelphia. Thereafter, Dr. Miller did an orthopedic surgical residency, which was completed in 1962. He practiced orthopedic surgical medicine from 1962 to 1976, but did CT Page 3640 a two year residency in the field of psychiatry at the New Jersey Medical School and attended one year of a three year program in psychoanalytic study at the William Allison White Institute in Manhattan. Dr. Miller related that he is certified in orthopedics and psychiatry by the American Academy of Osteopathic Specialists and prior to entering private practice in 1978, had "tremendous experience" in treating depressed persons. Since 1978, Lawrence Miller has been a marriage counselor and recently authored a book entitled "King of the Hill", which deals with personal interactions in the marital relationship. Since 1978, his practice has been limited to this type of counseling.
Dr. Miller, while being examined, testified that in his practice he refers mental health patients to other psychiatrists; has no admitting privileges to any hospital; and has never been a staff physician in a private psychiatric hospital. While Chief of Orthopedics, he related that he was suspended twelve times "for not doing charts".
At the conclusion of Dr. Miller's testimony concerning only his professional credentials, the plaintiff moved to have him qualified as an expert witness in this case against Dr. Thankappen and the Waterbury Hospital. The court declined to qualify Dr. Miller as an expert on the record presented by Ford. In explaining its bench decision of June 27, 1990, the court observed that the decedent, Rodney Campbell, was being treated in hospital by each defendant for mental health deficits; namely, suicidal ideation and substance abuse. The court noted that Dr. Miller has not treated such patients nor did he have any demonstrable knowledge of the protocols followed for inpatient care at a hospital's psychiatric unit as involved in the malpractice alleged here. From the evidentiary record presented, the court, in declining to qualify Dr. Miller as an expert, also indicated that it was not convinced that he had the professional knowledge and expertise from his training, and practice sufficient to critique the care provided Rodney Campbell in 1983 by Dr. Thankappen and the Waterbury Hospital.
After the court declined to qualify Dr. Miller, Ford sought a continuance in the trial of this case to obtain another expert. The court denied this request and the plaintiff rested. Thereafter, the court directed defendants' verdicts.
 III.
Upon our review of the trial record, we think the plaintiff's pending motions to set aside the verdicts are without merit. Ford failed to prove that Dr. Miller, a doctor of osteopathic medicine, had either the professional credentials, the professional expertise from his practice or a body of professional knowledge CT Page 3641 reasonably sufficient to qualify as an expert witness to critique the professional care provided by Dr. Thankappen, a medical doctor/board certified psychiatrist; and the Waterbury Hospital. Going v. Pagani, 172 Conn. 29, 35 (1976); Katsetos v. Nolan,170 Conn. 637, 646 (1976); Fitzmaurice v. Flynn, 167 Conn. 609, 618
(1975); Ardoline v. Keegan, 140 Conn. 552, 557 (1954); see also: Pool v. Bell, 209 Conn. 536, 542-43 (1989) on "overlap" between professional specialties.[3] It remains our opinion that Ford failed in her proof to qualify Dr. Miller as an expert in this case. See: Davis v. Margolis, 215 Conn. 408, 416-18 (1990).
Since Ford rested her case against Dr. Thankappen and the Waterbury Hospital without the necessary expert testimony to establish her claims in professional malpractice, the court was necessarily left with having to direct verdicts in favor of each defendant. Vinchiarello v. Kathuria, 18 Conn. App. 377, 381-82
(1989).
The motions to set aside are denied.
So ordered.
WILLIAM PATRICK MURRAY, J. A Judge of the Superior Court