[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This personal injury action arises from a collision involving a motor vehicle operated by the defendant, Thomas Groonell, and a motorcycle operated by the plaintiff, Paul Marsala. The plaintiff's injuries include the amputation of his right leg below the knee. The case was tried to a jury, before Judge Dorsey, from October 22, 1999 to November 2, 1999. The defendants moved for a directed verdict on the ground that the defendant Groonell was neither negligent nor the proximate cause of the accident. The motion was denied.
The jury returned a verdict for $285,000.00 in economic damages and $1,350,000.00 in non-economic damages. The defendants filed post-verdict motions arguing that the verdict should be set aside and that they should be granted a new trial on a number of legal grounds. Before these motions could be addressed Judge Dorsey died. The defendants then moved for a mistrial and, under General Statutes §§ 52-268 and 52-270, for a new CT Page 11268 trial based on the death of Judge Dorsey. The plaintiff moved for the appointment of a successor judge. On October 23, 2000, a memorandum of decision was issued granting the plaintiff's motion to appoint a successor judge and denying the defendants' motions for a new trial pursuant to §§ 52-268 and 52-270. The court did not, however, rule on the defendants' motion for a mistrial, leaving this issue for the successor judge. Marsala v. Groonell, Superior Court, judicial district of New Haven at Meriden, Docket No. 252959 (October 23, 2000, Robinson,J.).
This following motions are presently pending before the court:
1. Motion for a mistrial (#172);
2. Motion to set aside the verdict and order a new trial (#166)[1];
 3. Motion to set aside the verdict and for entry of judgment notwithstanding the verdict (#168)[2]; and
4. Motion for remittitur (#164).[3]
The collateral source issue raised by the defendants (#163) has been resolved by agreement of the parties. The parties have agreed that the collateral source amount is $1,121.76. It is noted that the defendants filed an objection (#170) to the plaintiff's bill of costs (#169). The plaintiff has since filed an amended bill of costs (date stamped February 28, 2001). The court will hold a separate hearing if the bill of costs remains an issue.
This successor judge heard argument on the pending motions on May 7, 2001.
 DISCUSSION
I. MOTION FOR A MISTRIAL
General Statutes § 51-183f provides: "If the term of office of any judge of the Superior Court expires during the pendency of any proceeding before him, or if any judge of the Superior Court is retired because of a disability, dies or resigns during the pendency of any proceeding before him, any other judge of that court, upon application, shall have power to proceed therewith as if the subject matter had been originally brought before him." CT Page 11269
Based on the steps outlined in Stevens v. Hartford Accident IndemnityCo., 29 Conn. App. 378, 386, 615 A.2d 507 (1992),[4] the successor judge in the present case should review the existing record and determine first whether he . . . might proceed without prejudicing either party. After this determination, the court would then either declare a mistrial or proceed to decide the post-verdict motions. In deciding the post-trial motions, the successor judge would be guided by the legal standards that apply to those issues. In reviewing the evidentiary decisions to determine whether Judge Dorsey abused his judicial discretion, the successor judge should be guided by the standards applicable to this question." Marsalav. Groonell, supra, Superior Court, Docket No. 252959.
The defendants' motion for a mistrial is denied. The court has, in line with General Statutes § 51-183f and Stevens, familiarized itself with the record, including the complete transcript of the testimony and the evidence presented at the trial, and has determined that the post-verdict motions can be decided without prejudice to the parties. In arriving at this determination, the court notes that it found no testimony that required observation of the witnesses to adequately evaluate credibility.
II MOTIONS TO SET ASIDE THE VERDICT AND ORDER A NEW TRIAL AND FOR ENTRY OF JUDGMENT NOTWITHSTANDTNG THE VERDICT
 A. Judge Dorsey did not abuse his discretion in admitting the testimony of the plaintiff's accident reconstructionist, Robert Mantho.
"It is well settled that [t]he trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . [Its] ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. (Citations omitted; internal quotation marks omitted.) Gaudio v. Griffin Health ServicesCorp., 249 Conn. 523, 546-47, 733 A.2d 197 (1999). While the foregoing is the appellate standard, this court holds it to be the appropriate standard for a successor judge.
At issue is the testimony of the plaintiff's accident reconstructionist. Robert Mantho, concerning the location of the car operated by the defendant, Thomas Groonell, specifically, when it became a threat to the plaintiff. The defendants argue that Mantho's testimony CT Page 11270 should have been excluded under State v. Porter, 241 Conn. 57, 698 A.2d 739
(1997), cert. denied, 523 U.S. 1058, 118 S.Ct. 1384, 140 L.Ed.2d 645
(1998), because "the methodology underlying his conclusions were based on conjecture and speculation rather than on any scientific method." (Defendants' Memorandum, December 12, 2000, p. 10.) The defendants also argue that Mantho was permitted to testify based on facts not in evidence and about hearsay statements made by others.
1. Applicability of State v. Porter
The standard for the admissibility of scientific evidence, as set forth in Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579,113 S.Ct. 2786,125 L.Ed.2d 469 (1993), was adopted by our Supreme Court in Statev. Porter, supra, 241 Conn. 68. Daubert was expanded in Kumho Tire Co.,Ltd. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238
(1999), to include not only scientific evidence, but also technical evidence. Kumho Tire Co., Ltd. v. Carmichael, supra 526 U.S. 141. The Connecticut Supreme Court has not, however, explicitly adopted KumhoTire.[5]
 Porter requires that before scientific evidence may be admitted, the trial court must determine that the underlying theory or methodology is scientifically valid, and that the underlying reasoning or methodology properly can be applied to the facts in the case. Id., 63-65. UnderPorter, trial judges are to serve as gatekeepers of scientific testimony "to minimize, to the extent possible, the confusion and prejudice that scientific evidence may generate." State v. Porter, supra, 241 Conn. 73
n. 18.
A review of the transcript reveals that Mantho testified that, to formulate his opinion as to how the accident occurred he "considered all the information that was available and essentially came up with three different scenarios of how this collision could have taken place. And the scenarios are based on what people are saying, what the deposition testimony is of the witnesses, as well as, the evidence with respect to the skid marks and scratches on the roadway that were reported to be on the pavement." (Tr., 10/22/99, p. 52.) At the point plaintiff's counsel offered an illustration depicting the movement of the Groonell vehicle in the three scenarios presented by Mantho, defendants' counsel objected and requested voir dire on it. (Tr., 10/22/99, p. 74.) The following colloquy then took place between defendants' counsel and Mantho:
 "Q: [W]hat is the science behind your determination that the point at which you draw this car is the point at which Mr. Groonell becomes a hazard? CT Page 11271
 "A: Well, again, based on my own experience and training in this field for many, many years —
"Q: No testing?
"A: Excuse me?
"Q: No scientific testing?
"A: This perception reaction doesn't require scientific testing.
 "Q: I'm not asking about perception reaction, I'm asking about the concept of a vehicle at some point and time becoming a perceived threat, what is the science underlying your decision to put the Groonell car wherever it is you put it on this diagram? It's not science, is it, it's your judgment call?
"A: That is a judgment, absolutely."
(Tr., 10/22/99, pp. 76-77.)
The defendants argued that under Porter, Mantho's testimony is impermissible because it is not based on science, rather, it is based on a judgment call made by Mantho. Judge Dorsey overruled the objection and allowed plaintiff's counsel to continue with direct examination. Defendants' counsel was then given the opportunity to cross-examine Mantho. At the completion of Mantho's testimony, defendants' counsel asked Judge Dorsey for his decision on whether Mantho's testimony metPorter, or whether Judge Dorsey decided that Porter did not apply. Judge Dorsey responded: "I don't think it applies. I think the testimony that I've heard is usual and customary in this type of cases and it's based upon timelines and distances, skid marks, slide marks and they're frequently used in this court to estimate speeds and estimate times to overcome those speeds." (Tr., 10/22/99, p. 162.)
Judge Dorsey did not abuse his discretion in admitting the testimony of Mantho as to the location of Groonell's vehicle when it became a threat to the plaintiff. The testimony of Mantho is not the type of evidence that is subject to a Porter analysis. Mantho's testimony did not involve scientific evidence, rather, Mantho based his opinions on the materials submitted to him and on his expertise as an accident reconstructionist. The defendants argue that the court should extend Porter by adopting the CT Page 11272Kumho Tire standard. This court need not reach this question in regard to Mantho's testimony. The testimony objected to by the defendants is usual and customary in a case involving the testimony of an accident reconstruction expert and requires analysis under neither Porter or KumhoTire.
2. Foundation for all of Mantho's testimony
"The fact that an expert opinion is drawn from sources not in themselves admissible does not render the opinion inadmissible, provided the sources are fairly reliable and the witness has sufficient experience to evaluate the information. . . . An expert may base his opinion on facts or data not in evidence, provided they are of a type reasonably relied on by experts in the particular field. . . . This is so because of the sanction given by the witness's experience and expertise. (Citations omitted; internal quotation marks omitted.) George v. Ericson,250 Conn. 312, 325, 736 A.2d 889 (1999). "[W]hen the expert witness has consulted numerous sources, and uses that information, together with his own professional knowledge and experience, to arrive at his opinion, that opinion is regarded as evidence in its own right and not as hearsay in disguise." (Internal quotation marks omitted.) In Re Barbara J.,215 Conn. 31, 43, 574 A.2d 203 (1990).
Mantho testified that accident reconstruction experts customarily rely on physical evidence, such as skid marks, marks on the roadway, measurements associated with positioning of the vehicles at impact and at points of rest, characteristics of the vehicles involved in the accident, the type of damage to the vehicles, the tires of the vehicles involved in the collision, and documentation, to reconstruct an accident and formulate an opinion as to how the accident happened. (Tr., 10/22/99, p. 38.) Mantho also testified that he reviewed and analyzed the deposition transcripts of witnesses, the police officer and other officials that were involved in the investigation, the police report, statements from witnesses, Groonell's recorded statement, photographs that were taken after the collision, the Department of Motor Vehicle photo log, measurements taken at the scene of the accident, and diagrams of the area where the collision occurred to reconstruct the accident and formulate an opinion as to how the accident occurred. (Tr., 10/22/99, pp. 38-40.)
Judge Dorsey did not abuse his discretion in admitting Mantho's testimony because the testimony had a proper factual foundation. The defendants rely on Going v. Pagani, 172 Conn. 29, 372 A.2d 516 (1976), to support their argument that because Mantho did not visit the scene of the collision until August 1998, more than three years after the accident, his testimony should have been excluded because it was not based on his personal observations. In Going, like in the present case, the accident CT Page 11273 reconstructionist did not visit the scene of the accident until three years after the incident and after the road had been repaved. The testimony of the accident reconstructionist in Going, however, "differed substantially from the observations and actual measurements taken by the police at the scene shortly after the accident occurred," and the court held that the trial court did not abuse its discretion in excluding the expert's testimony. Going v. Pagani, supra 172 Conn. 34-35. The testimony of Mantho did not differ substantially from the reports and observations of the police officer. Mantho actually based his testimony on, inter alia, the statements made by eyewitnesses, the police report, a diagram of the accident scene which was created by one of the police officers, and a video of the accident scene made eight days after the accident.
Mantho based his opinion on evidence which is typically relied upon by accident reconstruction experts, therefore, the defendants' argument that Mantho's testimony was improperly admitted because he was the first witness to testify and he relied on deposition testimony, is without merit. "An expert may base his opinion on facts or data not in evidence, provided they are of a type reasonably relied on by experts in the particular field." George v. Ericson, supra, 250 Conn. 325. If any error was made in admitting Mantho's testimony it was made harmless because the defendants had the opportunity to cross-examine Mantho and the witnesses whose deposition testimony Mantho relied upon to form his opinions.
 B. Judge Dorsey did not abuse his discretion in precluding the defendants from presenting the testimony of Mantho and the defendants' expert, Michael Cei, that the accident would not have occurred if the plaintiff had been traveling at or near the posted speed limit.
The trial court's decision to exclude expert testimony is subject to abuse of discretion review. Gaudio v. Griffin Health Services Corp., supra, 249 Conn. 546-47. This court applies this standard as a successor judge.
At issue are the rulings by Judge Dorsey precluding Mantho and the defendants' accident reconstructionist, Michael Cei, from testifying that, had the plaintiff been traveling at or near the posted speed limit of thirty miles an hour, the collision would not have occurred. (Tr., 10/22/99, pp. 2, 153-56; 11/1/99, pp. 705-07, 786-88.) The defendants argue that Judge Dorsey abused his discretion in excluding such testimony and had he not excluded the testimony, the plaintiff's negligence should have been determined to be the proximate cause of the his damages as a matter of law.
In Hines v. Davis, supra, 53 Conn. App. 838-40, the court held that the CT Page 11274 trial court did not abuse its discretion in excluding the testimony of an expert witness that the collision between a bicycle and a car would not have occurred had the car been traveling at the posted speed limit. "[T]he test for determining whether particular conduct is a proximate cause of an injury [is] whether it was a substantial factor in producing the result. . . . Speed alone, even rapid speed, does not suffice to establish proximate cause in a negligence action. . . . The fact that the defendant's particular speed resulted in his collision with the plaintiff at a specific point and time does not create a sufficient causal link to impose liability. The offer of proof does not indicate that the [defendant's] speed prevented him from avoiding a collision that he could have avoided if he were traveling at [the posted speed limit]. The defendant's particular speed is too remote and attenuated to constitute proximate cause." (Citations omitted; internal quotation marks omitted.)Hines v. Davis, 53 Conn. App. 836, 839-40, 731 A.2d 325 (1999).
1. Preclusion of Mantho's testimony as to the plaintiff's speed
Defendants' counsel made the following request of the court: "Your Honor, at this point I'd like to make an offer of proof with respect to whether or not Mr. Mantho thinks this collision would have occurred had [the plaintiff] been traveling at or near the speed limit." (Tr., 10/22/99, p. 153.) The following colloquy then took place between defendants' counsel and Mantho:
 "Q: If we assume under any of your scenarios that [the plaintiff] would have applied his brakes in the same manner at the same point that he did in your opinion, but we change his speed from forty nine to fifty one, we take it down to thirty five, in your opinion would there have been a collision there?
 "A: I believe I opined to that in my deposition and it most probably would have been a miss.
(Tr., 10/22/99, pp. 154-55.)
Because "speed alone . . . does not suffice to establish proximate cause in a negligence action," the testimony of Mantho is too speculative to constitute proximate cause. Hines v. Davis, supra, 53 Conn. App. 839. Judge Dorsey did not abuse his discretion in excluding Mantho's testimony. "The trial court's exercise of discretion in admitting expert testimony is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law." (Internal quotation marks omitted.) Id., 840. CT Page 11275
2. Preclusion of Cei's testimony as to the plaintiff's speed
Counsel for the defendants made the following offer of proof relating to Cei's testimony about the plaintiff's speed:
 "Q: Mr. Cei, if, in fact, [the plaintiff] had been traveling thirty miles per hour rather than fifty five or higher and if you assumed that he perceived and reacted at the same spot in the road and applied his brakes in the same manner, do you have an opinion with a reasonable degree of engineering probability as to whether or not he would have struck the Groonell vehicle?
"A: Yes.
"Q: And what is that opinion?
"A: That he would not have.
 "Q: In fact, do you have an opinion based upon a reasonable degree of engineering probability what would have occurred under the same situation had there been any meaningful reduction in [the plaintiff's] speed below fifty five miles an hour?
"A: Yes.
"Q: And what is that opinion?
"A: There would not have been a collision."
(Tr., 11/1/99, p. 787.)
The opinion offered by Cei is essentially similar to the opinion offered by Mantho. Judge Dorsey did not abuse his discretion in precluding Cei's testimony.[6]
3. Proximate cause
Because the court did not abuse its discretion in precluding the testimony of Mantho and Cei concerning the plaintiff's speed, the defendants' argument that the plaintiff's negligence should be determined to be the proximate cause of his damages, as a matter of law, must fail. CT Page 11276
 C. Judge Dorsey did not abuse his discretion in excluding evidence of the plaintiff's felony convictions which were nineteen, twenty and thirty years old.
The standard of review is abuse of discretion. State v. Abdalaziz,248 Conn. 430, 452, 729 A.2d 725 (1999).
The use of earlier convictions to impeach credibility is dealt with in § 6.7 of the Connecticut Code of Evidence. The purpose of adopting the Connecticut Code of Evidence was to codify existing evidentiary rules and not to adopt new rules for Connecticut trials. Section 6.7 is consistent with the arguments of each side on the propriety of the trial judge excluding the convictions. Section 6.7 provides, in pertinent part: "In determining whether to admit evidence of a conviction, the court shall consider: (1) The extent of the prejudice likely to arise, (2) the significance of the particular crime in indicating truthfulness, and (3) the remoteness in time of the conviction."
Our Supreme Court has established no absolute time limit that would bar the admissibility of certain convictions, although it has suggested a ten year limit on admissibility measured from the later of the date of conviction or the date of the witness's release from the confinement imposed by the conviction. State v. Carter, 228 Conn. 412, 431,636 A.2d 281 (1994). "[I]t is a rare prior conviction which is more than ten years old which retains the minimal probative value sufficient to overcome its prejudice." (Internal quotation marks omitted.) State v.Murdick, 23 Conn. App. 692, 701, 583 A.2d 692, 701 (1991). Additionally, while Connecticut has not unequivocally adopted the ten year cut off rule found in the Federal Rules of Evidence § 609(b), it does look to the Federal Rules for insight into the meaning of the Connecticut Code. Statev. Sauris, 227 Conn. 389, 410, (1993).
This court is convinced that Judge Dorsey did not abuse his discretion in refusing to admit the felonies in question.
 D. If plaintiff's counsel is deemed to have delivered a "golden rule" argument, that argument did not contain sufficient prejudice to warrant a new trial.
There were several changes made to page 822 of the trial transcript which contains the plaintiff's claimed golden rule argument. A copy of page 822 was presented to the court at the time of argument on the post-trial motions. The court is using the copy which all parties have agreed accurately reflects what in fact was said in closing arguments. CT Page 11277
The argument objected to concerns a hypothetical "wanted to buy" ad. In the hypothetical presented by plaintiff's counsel, a medical lab wants to buy a lower right leg with the incidental consequences of amputation without anesthesia, screaming pain and suffering, emotional upset and psychological damages. At times in the argument, plaintiff's counsel referred to the leg generically as "a leg" or "human leg," however, on at least three occasions in the argument, plaintiff's counsel referred to the leg as "your leg." Following the conclusion of the plaintiff's closing argument, a colloquy was held between Judge Dorsey and the lawyers, at which time Attorney Laney objected, claiming that a "golden rule" argument had been made. At the conclusion of that colloquy the following exchange is found:
 "The Court: He did ask them, `Who would answer the ad and what they would pay for it'. But, he didn't directly relate that to the jury themselves, so, under those circumstances I don't think it's Golden Rule.
"Mr. Laney: Very well, your Honor.
"Mr. McNamara: I took pains not to do that, your Honor.
"The Court: All right. . . ."
(Tr., 11/1/99, p. 825.)
The court is of the opinion that a reference to the leg without the specific personal pronoun "your" would be preferable to avoid any claim of a golden rule argument. Nevertheless, in context, it is the court's holding that the argument did not reach prohibited golden rule proportions and, in any event, was not so prejudicial as to warrant a new trial.
 E. Judge Dorsey's refusal to grant a challenge for cause to remove venireperson DeLaurentis does not constitute grounds for a new trial.
"If the judicial authority before whom such examination is held is of the opinion from such examination that any juror would be unable to render a fair and impartial verdict, such juror shall be excused by the judicial authority from any further service upon the panel, or in such action, as the judicial authority determines." Practice Book § 16-6.
The court has reviewed the transcript of the voir dire examination of venireperson Carol DeLaurentis, dated October 19, 1999. During that voir CT Page 11278 dire, DeLaurentis disclosed that her husband had been involved in a serious accident which might eventually result in an amputation. When asked whether her husband's situation would affect her ability to be fair, she stated, "Well I would try to but it is very painful for me because I know that it is something that I may be faced with in the future with my husband." (Tr., 10/19/99, p. 2.) When asked if she would follow the judge's instructions, she answered, "Yes I would. I will try to do the best that I could." (Tr., 10/19/99, p. 4.)
Judge Dorsey ruled as follows: "Considering all her educational background and her responses to the questions and her response particularly to the question as to whether she would follow the Judge's instructions which were (sic) clearly indicate that she has to decide this case on the facts of this case and only the facts of this case I am not going to grant a request to challenge for cause." (Tr., 10/19/99, pp. 5-6.)
After reviewing the transcript, the court is not prepared to find that Judge Dorsey abused his discretion in refusing to grant the challenge for cause. Equally important, while the court recognizes that it is in the unique position of substituting for the trial judge, and is not a one-man appellate court, nevertheless, our law generally provides that "[a] trial court's refusal to remove a juror for cause is reversible error only if the party has exhausted all of his or her peremptory challenges and `an additional challenge is sought and denied.'" Eisenbach v. Downey,45 Conn. App. 165, 172, 694 A.2d 1376 (1997), quoting State v. Esposito,223 Conn. 299, 313, 613 A.2d 242 (1992).
While the court need not decide whether Esposito is binding on a trial judge sitting as a successor judge pursuant to General Statutes §51-183f, the reason for the Esposito rule would appear to be applicable in the present situation. The defendants cannot demonstrate any actual prejudice in the court's failure to remove DeLaurentis. DeLaurentis was removed by the exercise of a peremptory challenge. There is nothing in the record to indicate that there was a later venireperson who should have been removed but was not because the defendants were out of challenges. In the absence of a request for another peremptory challenge to remove an objectionable venireperson, there is no reason for the court to conclude that any harm was done to the defendants even if Judge Dorsey had abused his discretion in refusing to remove DeLaurentis. The court concludes, first, that there was no abuse of discretion, and secondly, if one were to find an abuse of discretion, the spirit and rationale ofEsposito would lead the court to refuse to grant a new trial for the failure to remove DeLaurentis.
F. The economic damages awarded by the jury were excessive. TheCT Page 11279 non-economic damages awarded by the jury were not excessive.
The jury awarded a total verdict of $1,635,000. (Tr., 11/2/99, p. 942.) This was composed of $285,000 for economic damages and $1,350,000 for non-economic damages. (Tr., 11/2/99, p. 941.) The question for the court in examining the excessiveness of damages is whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption."Wichers v. Hatch, 252 Conn. 174, 187, 745 A.2d 789 (2000).
While not finding the economic damages shocking in amount, the court agrees with the defendants that a portion of the economic damages are completely unsupported by any evidence presented at trial so that the figure is the result of mistake. The plaintiff presented evidence of total medical cost of $75,654.36. In closing argument, plaintiff's counsel, relying on the testimony of prosthetist, Nicholas Guarino, calculated future medical costs to be $151,200. (Tr., 10/29/99, pp. 612-616; 11/1/99, pp. 819-820.) This leads to total economic damages of $226,854.36. The jury awarded $285,000.00. (Tr., 11/2/99, p. 941.) The court finds no reasonable evidentiary basis for the excess of $58,145.64, which the jury awarded as economic damages. The court recognizes that it can consider the testimony and evidence about the plaintiff's active life style and life expectancy, and that the court is not absolutely required to limit economic damages to those estimated by Guarino. The court finds, however, that the economic damages exceed the damages proven at trial, and, accordingly, orders a remittitur of the economic damages in the amount of $58,145.64.
As to the non-economic damages, the jury heard evidence of a traumatic, painful and life-altering injury. They viewed photographs of the plaintiff's mangled leg in the emergency room and of the cross-section of the plaintiff's leg that was left open to drain for more than five days. They heard about his screaming during the painful dressing changes. The jury also heard the testimony of Vincent Manjoney, M.D., with regard to the pain suffered by the plaintiff and the resulting disability from the amputation. They heard that the plaintiff's leg was almost z-shaped in the emergency room. They heard testimony concerning the leg which was left open for five to six days while it was "somewhere between half to twice its normal thickness and size." The plaintiff testified extensively about the pain he experienced and the attempt to control it by using intravenous morphine. There was testimony that the dressing changes were so painful that the doctors considered using the operating room, with the plaintiff under anesthesia, for the dressing changes. The dressing changes were intolerable even after five days. Two anesthesiologist were involved in pain control. There was medical testimony that the plaintiff's lower right extremity was 70 percent CT Page 11280 permanently disabled, which translated into a 28 percent disability of a whole person. Considering all of the facts which were before the jury, the court finds that the non-economic damages were fair, just and reasonable and that no remittitur is appropriate with regard to the non-economic damages.
 G. This court and Judge Dorsey are bound to follow Connecticut Supreme Court precedent and affirm the instruction on income taxation on damages awards.
Judge Dorsey failed to instruct the jury that any award for personal injuries is not subject to federal income tax. Judge Dorsey's actions in this regard were required by the Connecticut Supreme Court decision inGorham v. Farmington Motor Inn, Inc., 159 Conn. 576, 580-82, 271 A.2d 94
(1970). This court recognizes that a decade after the Gorham decision, the United States Supreme Court in Norfolk and Western Railroad Co. v.Liepelt, 444 U.S. 490, 497-98, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980), approved an instruction that damage awards were not subject to federal income tax. It is conceivable that our Supreme Court will take the occasion of this, or another, case to reconsider its decision in Gorham
in light of subsequent federal precedent. Unless and until our Supreme Court reverses Gorham, however, Gorham was binding authority on Judge Dorsey and is binding authority on this court. Judge Dorsey's instruction in accordance with the holding in Gorham was not error.
 CONCLUSION
For the foregoing reasons, the defendants' following motions are denied: motion for a mistrial (#172); motion to set aside the verdict and order a new trial (#166); and motion to set aside the verdict and for entry of judgment notwithstanding the verdict (#168). The defendants' motion for remittitur (#164) is granted as to the economic damages in the amount of $58,145.64.
By the Court,
Kevin E. Booth Judge of the Superior Court